UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEAN BARILE,                       :

                   Plantiff,      :

         -against-          :

ALLIED INTERSTATE, INC.,       :

                 Defendant.   :
------------------------------------------------------------X

| USDC SDNY |
|---|
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: _1/30/2013_ |

No. 12 Civ. 916 (LAP) (DF)
(and related cases listed below)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:**

       Currently before this Court for report and recommendation are fee applications by a number of plaintiffs who, in separate, individual cases, have sued defendant Allied Interstate, Inc. ("Allied") under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, ("FDCPA"). In each of those cases, the plaintiff has accepted a modest offer of judgment made by Allied, and all that remains is the application of the plaintiff's counsel, Kimmel & Silverman, P.C. (the "Kimmel Firm" or the "Firm"), for attorneys' fees and costs.

       This Report and Recommendation addresses the fee applications that have been filed and briefed, and are ripe for review, in the following 26 cases:

1.   *Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916 (LAP) (DF)
2.   *Zamborowski v. Allied Interstate, Inc.*, No. 12 Civ. 955 (LAP) (DF)
3.   *Campbell v. Allied Interstate, Inc.*, No. 12 Civ. 1315 (LAP) (DF)
4.   *Black v. Allied Interstate, Inc.*, No. 12 Civ. 1321 (LAP) (DF)
5.   *Brasseaux v. Allied Interstate, Inc.*, No. 12 Civ. 1323 (LAP) (DF)
6.   *Reed v. Allied Interstate, Inc.*, No. 12 Civ. 1961 (LAP) (DF)
7.   *Thompson v. Allied Interstate, Inc.*, No. 12 Civ. 2291 (LAP) (DF)[1]
8.   *Waldran v. Allied Interstate, Inc.*, No. 12 Civ. 2380 (LAP) (DF)
9.   *Lawrence v. Allied Interstate, Inc.*, No. 12 Civ. 2552 (LAP) (DF)
10.  *Harris v. Allied Interstate, Inc.*, No. 12 Civ. 2812 (LAP) (DF)

---

[1] Although Allied has not opposed the fee application in the *Thompson* case, this Court considers that application to be "fully briefed" for the purposes of this Report and Recommendation because Allied's time to oppose has expired.

11. *Turner v. Allied Interstate, Inc.*, No. 12 Civ. 3208 (LAP) (DF)
12. *Banks v. Allied Interstate, Inc.*, No. 12 Civ. 3357 (LAP) (DF)
13. *Bloomfield v. Allied Interstate, Inc.*, No. 12 Civ. 3358 (LAP) (DF)
14. *Roop v. Allied Interstate, Inc.*, No. 12 Civ. 3442 (LAP) (DF)
15. *Fields v. Allied Interstate, Inc.*, No. 12 Civ. 4063 (LAP) (DF)
16. *Clum v. Allied Interstate, Inc.*, No. 12 Civ. 4187 (LAP) (DF)
17. *Bradshaw v. Allied Interstate, Inc.*, No. 12 Civ. 4235 (LAP) (DF)
18. *Smith v. Allied Interstate, Inc.*, No. 12 Civ. 4279 (LAP) (DF)
19. *Mason v. Allied Interstate, Inc.*, No. 12 Civ. 4318 (LAP) (DF)
20. *Paul v. Allied Interstate, Inc.*, No. 12 Civ. 4340 (LAP) (DF)
21. *Williams v. Allied Interstate, Inc.*, No. 12 Civ. 4429 (LAP) (DF)
22. *Smallwood v. Allied Interstate, Inc.*, No. 12 Civ. 4485 (LAP) (DF)
23. *Powers v. Allied Interstate, Inc.*, No. 12 Civ. 4582 (LAP) (DF)
24. *Schroeder v. Allied Interstate, Inc.*, No. 12 Civ. 4583 (LAP) (DF)
25. *Simpson v. Allied Interstate, Inc.*, No. 12 Civ. 5370 (LAP) (DF)
26. *Snajczuk v. Allied Interstate, Inc.*, No. 12 Civ. 7003 (LAP) (DF)

Having reviewed the parties' submissions with respect to these 26 applications, I recommend that attorneys' fees and costs be awarded to the plaintiffs in each of these cases, but in reduced amounts, as set forth below.

## BACKGROUND

The Kimmel Firm has represented a large number of plaintiffs in FDCPA cases. Through the Firm's website, potential plaintiffs can "Request a FREE Case Review" from the Firm by filling in their basic information on an interactive form that enables them to select from a menu of debt collectors (including Allied) that may have contacted them. *See* www.creditlaw.com (home page of the Kimmel Firm). Kimmel Firm attorneys and staff apparently conduct intake interviews, review case files, prepare preliminary communications with the potential defendant, and eventually serve a complaint and prosecute the action. The complaints in the cases before this Court variously involve allegations of, *inter alia*: repeated, harassing debt-collection calls, often at odd hours; improper threats to garnish wages and/or have a plaintiff arrested or sent to jail; false statements that the collector is a government agent;

2

attempts to collect from the wrong party; abusive or harassing statements designed to intimidate plaintiffs; failure to give required notices of the right to dispute a debt or to demand verification; and/or unauthorized disclosure of debt to third parties.

In every one of the particular cases addressed herein, Allied made the plaintiff an offer of judgment for $500 – half the statutory damages maximum of $1000, *see* 15 U.S.C.A. § 1692k(a)(2)(A) – before or at the beginning of discovery, and the plaintiff accepted. Each offer of judgment included "reasonable costs and attorneys' fees," and those offers made on or after June 29, 2012 (*i.e.*, the offers made in 20 of the 26 cases discussed herein) specified that the fees in question would be those "incurred by the Plaintiff up to the date" of the offer. In fee applications now made in each case, the Kimmel Firm has presented detailed time records for the various attorneys and support staff at the Firm who worked on the case.

Although each of the plaintiffs is entitled to reasonable attorneys' fees, this Court concludes, like the vast majority of courts to have considered fee applications on behalf of the Kimmel Firm in similar cases, that the fees the Firm has requested are excessive and warrant reduction.[2]

---

[2] As a general matter, this Court notes that, on average, it is recommending that the fees requested by the Kimmel Firm be reduced by half or more of the amounts sought. The average fee award this Court is recommending is just under $2,000, with the average in the more recent cases dropping to about $1,500. These recommendations are in line with awards made in similar cases in this district, *see, e.g., Tipoo v. Cohen & Slamowitz, LLP*, No. 11 Civ. 6046 (RJS), 2012 WL 1981482 (S.D.N.Y. May 30, 2012) (awarding $1,800 in fees, upon settlement of single-plaintiff FDCPA case), and both Allied and the Kimmel Firm are encouraged to bear them in mind when considering the potential settlement of any future, similar claims.

## DISCUSSION

**I.    APPLICABLE LEGAL STANDARDS**

The FDCPA provides for the award of costs and "reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The party seeking the fees "must provide the Court with sufficient information to determine if the fee assessed is reasonable." *Cordero v. Collection Co.*, No. 10 CV 5960 (SJ) (VVP), 2012 WL 1118210, at *3 (E.D.N.Y. Apr. 3, 2012) (citing *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir.1983)). To that end, the fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148.

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates "presumptively reasonable fee" (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010) (internal quotation marks omitted)). There is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 130 S. Ct. at 1673.

Where the requested amount of fees is excessive because the number of hours stated is greater than should have been required, the Court should reduce the stated hours accordingly. *See Seitzman v. Sun Life Assurance Co. of Canada*, 311 F.3d 477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours). A reduction is also appropriate where the proffered attorney time records are vague or otherwise inadequate to enable the Court to

4

determine the reasonableness of the work performed or the time expended. *See Hensley*,

461 U.S. at 433; *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic

Republic*, No. 10 Civ. 5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012)

(holding vague and block-billed time records insufficient to substantiate claimed expenditure of

time; collecting cases). In such circumstances, a percentage reduction may be applied as a

"practical means of trimming fat" from a fee application. *Carey*, 711 F.2d at 1142, 1146

(allowing percentage reductions to correct for deficiencies in fee application including

"inadequate detail in documentation").

 In determining whether an excessive amount of time was expended on a matter, the Court

may also consider the nature and quality of the work submitted by counsel, *see Kirsch v. Fleet

St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226,

232 (2d Cir. 1987), as well as the degree of counsel's success, *see Hensley*, 461 U.S. at 436.

Further, "[a]s a general matter, the reasonable number of hours used for a lodestar calculation

should exclude any hours dedicated to severable unsuccessful claims." *Thai-Lao Lignite*, 2012

WL 5816878 at *9 (citations and internal quotations omitted).

 Where an attorney has billed time for performing "administrative tasks" such as copying

or organizing documents, sending faxes, or filing documents with the court, such time should not

be compensated at an attorney-level billing rate. *See Ryan v. Allied Interstate, Inc.*, Nos. 12 Civ.

0526 (AJP), 12 Civ. 1719 (AJP), 2012 WL 3217853, at *6 (S.D.N.Y. Aug. 9. 2012). Similarly,

when a senior attorney bills at a high rate for activities that could and should have been

performed by a more junior attorney on the case, some deduction is warranted. *See id.*, at *7

(reducing hours of attorney at Kimmel Firm for "work that should have been done by

lower-billing lawyers").

Billing practices that tend to inflate the number of hours recorded also warrant reductions. *See, e.g., Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC*, No. 05 Civ. 6757 (LTS) (MHD), 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009) (noting that billing in 15 minute increments "adds an upward bias in virtually all cases" and therefore "justifies some further conservatism in calculating the amount of compensable time"). In that regard, breaking out small tasks that take minimal time into separate entries – not for the sake of clarity, but in order to increase the total amount billed – is inappropriate. *See Ryan*, 2012 WL 3217853, at *7 (reduction warranted for attorney's practice of separately billing, at a standard billable increment, each short email received by attorney).

The reasonable hourly rate is what "a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184 (2d Cir. 2008), and varies by practice area and location. *Id.*, at 192. The Second Circuit applies the "forum rule," under which out-of-district counsel should presumptively not be compensated at a higher rate than attorneys in the "district in which the reviewing court sits." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009) (quotations and citations omitted). Relying on the logic of the forum rule, which requires courts to ask whether a "reasonable, paying client" would have selected more expensive counsel when less expensive local counsel was available, *see Simmons*, 575 F.3d at 174-75, some courts have held that "[t]o the extent the reasonable hourly rate for an out-of-district lawyer is less than the billing rate in the district where the court sits, the lower rate should apply," *Ryan*, 2012 WL 3217853 at *4.

The FDCPA also makes noncomplying debt collectors liable to debtor (or alleged debtor) plaintiffs for "the costs of the action." 15 U.S.C. § 1692k(a)(3). Plaintiffs must nevertheless substantiate any requested costs. *CJ Prods. LLC v. Your Store Online LLC*, No. 11 Civ. 9513

(GBD) (AJP), 2012 WL 4714820, at *2 (S.D.N.Y. Oct. 3, 2012) (denying reimbursement for

unsubstantiated costs).  Court fees that are reflected on the Court's docket are sufficiently

substantiated, *id.*, as are costs for which Plaintiffs provide additional proof, such as invoices or

receipts.  A sworn statement or declaration under penalty of perjury that certain amounts were

expended on particular costs may also be sufficient.  *See Abel v. Town Sports Int'l LLC*,

No. 09 Civ. 10388 (DF), 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 16, 2012).  A mere assertion

that a certain cost was incurred, though, is insufficient, where such an assertion is made in a

conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or

documentation.

## II.      FEES AND COSTS THAT SHOULD BE AWARDED IN THESE CASES

### A.      Reasonable Hourly Rates

Plaintiffs request compensation for Kimmel Firm attorneys and staff at the following

rates:

Partner:
Craig Thor Kimmel ("Kimmel") – $425/hour

Associates:
Amy L. Bennecoff ("Bennecoff") – $300/hour
Tara L. Patterson ("Patterson") – $300/hour
Angela K. Troccoli ("Troccoli") – $300/hour
Christopher J. Kelleher ("Kelleher") – $255/hour
Joseph L. Gentilcore ("Gentilcore") – $225/hour
Jacob U. Ginsburg ("Ginsburg") – $225/hour

Law Clerks (*i.e.*, law-school graduates not yet admitted to the bar):
David Allen ("Allen") – $180/hour
Doher Ferris ("Ferris") – $180/hour

Summer Associate/Intern
Caroline Diehl ("Diehl") – $180/hour

Paralegals:
Katelyn Fitti ("Fitti") – $165/hour
Jason Ryan ("Ryan") – $155/hour
Pete Keltz ("Keltz") – $80/hour

Although the Kimmel Firm is headquartered in Ambler, Pennsylvania, the Firm contends that its rates should not be reduced because of its out-of-district location. (*See, e.g.,* Brief in Reply to Defendant's Opposition to Plaintiff's Petition for Attorney's Fees and Costs ("Pl. Reply"), in *Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916 (Dkt. 25), at 6-7.)[3] First, it asserts that it has commanded these high rates even in its home district, the Eastern District of Pennsylvania. (*See id.* at 4-6 (citing, *e.g., Lindenbaum v. NCO Fin. Sys., Inc.*, No. 11–264, 2011 WL 2848748, at *1 (E.D. Pa. July 19, 2011).) Second, it contends that it should not be treated as "out-of-district" counsel because it has a satellite office on Sixth Avenue in Manhattan. (*See id.* at 7 & n.5.) Finally, the Firm argues that the Second Circuit's "forum rule" requires in-district rates for out-of-district counsel. (*See id.*, at 6-7)

The Firm nowhere indicates, however, that any of the work that it billed in these cases was actually performed in New York, and the Court notes that all but one of the plaintiffs are not residents of this district. It strains credulity that a "reasonable, paying client" from outside this

---

[3] The Kimmel Firm has submitted extremely similar papers in each of the cases addressed in this Report and Recommendation, and Allied has responded with similar filings, as well. In each case, on behalf of the plaintiff, the Kimmel Firm has filed a "Motion for Attorneys' Fees and Costs," supported by a memorandum of law ("Pl. Mem."), a bill of costs (sometimes styled as an exhibit to the memorandum), and declarations (sometimes titled "certifications" or "memos") from the attorneys who worked on the case (referred to herein as "Kimmel Decl.," "Patterson Decl.," "Troccoli Decl.," "Bennecoff Decl.," "Kelleher Decl.," "Gentilcore Decl.," and/or "Ginsburg Decl."). Allied has generally submitted an opposing memorandum of law ("Def. Mem.") and supporting declaration, and the Kimmel Firm has generally submitted a reply ("Pl. Reply"). For ease of reference, during the separate discussion of each case, below, this Court will simply cite to these filings by a generic name (such as "Pl. Mem. or Kimmel Decl."), together with the relevant docket number of the filing, in the case being addressed.

district would retain counsel, also from outside this district, but agree to pay New York City

rates because the suit was filed here.  Further, even in this district, the prevailing rates in FDCPA

suits are lower than those the Firm seeks.[4]  *See, e.g., Ryan v. Allied Interstate, Inc.,*

Nos. 12 Civ. 0526 (AJP), 12 Civ. 1719 (AJP), 2012 WL 3217853, at *4-5 (S.D.N.Y. Aug. 9,

2012) (rejecting Kimmel's request for $425/hour and collecting cases to illustrate that "[p]rior

cases in this District have approved fees of $200–$300 per hour in FDCPA cases," including to

the Kimmel Firm); *Woods v. Sieger, Ross & Aguire, LLC*, No. 11 Civ. 5698 (JFK), 2012 WL

1811628, at *5 (S.D.N.Y. May 18, 2012) (holding $200/hour was "reasonable" for lead attorney

in FDCPA case who graduated from law school seven years before case was filed); *Dunn v.*

*Advanced Credit Recovery Inc.*, No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *6

(S.D.N.Y. Mar. 1, 2012) (recommending award of $300/hour to attorneys admitted in 1996 and

1995), *report and recommendation adopted by* 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012);

*Leyse v. Corporate Collection Servs., Inc.*, 545 F. Supp. 2d 334 (S.D.N.Y. 2008) (awarding $225

per hour for FDCPA attorney with 10 years of experience).  The Court therefore recommends

that the Firm be awarded fees at reduced rates, as follows:

### 1.   Partner Rate

Kimmel, who has over 20 years of experience in consumer law, including "several" years

in the FDCPA practice area (*see, e.g.,* Kimmel Decl., in *Barile v. Allied Interstate, Inc.*, No. 12

Civ. 916 (Dkt. 17), at ¶ 3.), requests compensation at a rate of $425 per hour, but I recommend

---

[4] Indeed, in recent cases in other jurisdictions, the Kimmel Firm has apparently reduced its claimed rates, underlining the necessity of a reduction in the cases now before this Court as well.  *See, e.g. Wong v. American Credit and Collections, LLC*, No. 3:11–cv–04428, 2012 WL 5986474, at *5 (D.N.J. Nov. 28, 2012) (noting that Kimmel Firm was seeking rates of, *inter alia*, $325/hour for Kimmel, and $250/hour for Bennecoff).

that his rate be reduced to $300 per hour, in conformity with the rates recently awarded to

Kimmel in similar suits in this district. *See O'Toole v. Allied Interstate, LLC,* No. 12 Civ.

4942 (WHP), 2012 WL 6197086 (S.D.N.Y. Dec. 12, 2012) (awarding Kimmel $300/hour);

*Reith v. Allied Interstate, Inc.,* No. 12 Civ. 4278 (PKC), 2012 WL 5458007 (S.D.N.Y. Nov. 8,

2012) (same); *Ryan,* 2012 WL 3217853 (same); *but see Muise v. Allied Interstate, Inc.,*

No. 12 Civ. 1317 (TPG), 2012 WL 4044699 (S.D.N.Y. Sept. 12, 2012) (awarding Kimmel

$200/hour).  The rate of $300 per hour also comports with awards that have been made in other

cases, to comparably experienced attorneys who have successfully prosecuted actions under the

FDCPA. *See e.g. Dunn,* 2012 WL 676350 at *6 (recommending award of $300/hour for

attorneys with 16 and 27 years of experience), *report and recommendation adopted by*

2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012).

## 2. Associate Rates

The Kimmel Firm requests rates of $300 per hour for Bennecoff, Patterson, and Troccoli,

all associates with several years of experience.  Bennecoff was admitted in 2005 and has

practiced consumer law since then. (*See* Bennecoff Decl. in *Barile v. Allied Interstate, Inc.,*

No. 12 Civ. 916 (Dkt. 18), at ¶¶ 4, 14-19.)  Patterson was admitted to the bar in 2001 and joined

the Kimmel Firm in 2009, after working as Assistant Counsel for the Pennsylvania State Police.

(*See* Patterson Decl., in *Reed v. Allied Interstate, Inc.,* No. 12 Civ. 1961 (Dkt. 21), at  ¶¶ 4, 6-11.)

Troccoli was admitted in 2001, but gives little detail of her experience since then. (*See*

*generally* Troccoli Decl., in *Turner v. Allied Interstate, Inc.,* No. 12 Civ. 3208 (Dkt. 21).)

A more appropriate rate for each of these attorneys is $225 per hour. *See O'Toole,* 2012 WL

6197086 (awarding $225 to Kimmel Firm's senior associates); *Reith,* 2012 WL 5458007 (same);

*Ryan,* 2012 WL 3217853 (same); *see also Woods,* 2012 WL 1811628, at *5 (approving

10

$200/hour for 2004 law graduate in FDCPA case); *Leyse*, 545 F. Supp. 2d at 336 (approving

$225/hour in FDCPA case for attorney with ten years of experience); *but see Muise v. Allied*

*Interstate, Inc.*, No. 12 Civ. 1317 (TPG), 2012 WL 4044699 (S.D.N.Y. Sept. 12, 2012)

(awarding Bennecoff $150/hour).

In just one of the cases before this Court (the *Smallwood* case), the Kimmel Firm's bill

reflects work performed by Kelleher, and the Firm seeks compensation for his work at the rate of

$255 per hour. (*See* Kelleher Decl., in *Smallwood v. Allied Interstate, Inc.*, No. 12 Civ. 4485

(Dkt. 20), at ¶ 17.) Kelleher has apparently practiced in a host of other practice areas since 2000,

was on active duty in the U.S. Navy from 2006-2011, and joined the Firm in 2012. (*See id.*, at

¶¶ 5-11.) Kelleher does not indicate that his position in the Navy involved any legal work, and

thus has not demonstrated that his actual level of experience is higher than that of a mid-level

associate. Under the circumstances, I recommend that he be compensated at $200 per hour.

The Firm requests $225 per hour for the work of junior associates Gentilcore and

Ginsburg. Ginsburg was admitted in October 2011, but began working for the Firm as a "law

clerk" in late 2010. (*See* Ginsburg Decl., in *Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916

(Dkt. 19), at ¶¶ 2-3.) Gentilcore has also been admitted since October 2011, and joined the

Kimmel Firm as a law clerk earlier that year. (*See* Gentilcore Decl., in *Reed v. Allied Interstate,*

*Inc.*, No. 12 Civ. 1961 (Dkt. 22), at ¶¶ 1-2.) Ginsburg and Gentilcore should each be

compensated at the rate of $175 per hour. *See Reith*, 2012 WL 5458007 at *2 (awarding

Gentilcore $175/hour); *Ryan*, 2012 WL 3217853 at *6 (awarding Ginsburg $175/hour); *see also,*

*e.g., Shepherd v. Law Offices of Cohen & Slamowitz, LLP*, No. 08 Civ. 6199 (CM) (LMS), 2010

WL 4922314, at *6-7 (S.D.N.Y. Nov. 19, 2010) (recommending rate of $160/hour for recent law

11

graduate in complex FDCPA case), *report and recommendation adopted by* Order dated Nov. 29, 2010 (Mem. Endors.).

### 3. Law Clerk Rates

The Kimmel Firm requests compensation at the rate of $180 per hour for Allen and Ferris, two "law clerks" who, at the time of the submissions at issue, were recent law graduates but not yet admitted to the bar. (*See* Kimmel Decl., in *Thompson v. Allied Interstate, Inc.*, No. 12 Civ. 2291 (Dkt. 17), at ¶ 29; Kimmel Decl., in *Brasseaux v. Allied Interstate, Inc.,* No. 12 Civ. 1323 (Dkt. 16), at ¶ 28.) "Regardless of the level of skill he displays, a law clerk cannot expect to garner fees similar to those earned by a junior associate who is licensed to practice law." *Kadden v. VisuaLex, LLC*, No. 11 Civ. 4892 (SAS), 2012 WL 6097656 (S.D.N.Y. Dec. 6, 2012) (awarding $100/hour for law clerk in FLSA case after noting reasonable range of $80 to $150/hour).

A law clerk should nevertheless be awarded slightly more than a paralegal. *See, e.g. Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211 (LTS) (HP), 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (approving rates of $200/hour for law clerks and $150/hour for paralegals in FLSA class action); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011) (approving rates of $125/hour for law clerks and $100/hour for paralegals in FLSA case). Here, as set forth below, I recommend that rates of up to $100 per hour be awarded for the Firm's paralegals, and, accordingly, I recommend that the rates for the law clerks be set at $125 per hour.

### 4. Summer Associate/Intern Rate

The Kimmel Firm also seeks recovery at the rate of $180 per hour for Diehl, who apparently worked for the Firm for one summer, prior to entering her third year of law school.

12

(*See* Kimmel Decl., in *Lawrence v. Allied Interstate, Inc.*, No. 12 Civ. 2552 (Dkt. 15), at ¶ 29.) Although the papers submitted by the Firm refer to Diehl as a "law clerk," Kimmel also apparently puts her in the same category as "summer associates" or "legal interns." (*See, e.g., id.*) In *O'Toole*, the Court declined to award any fees for Diehl's work, noting that there was no evidence that the Firm paid Diehl for her time, and finding that the Firm's "attempt to collect a fee for any effort by an intern is beyond the pale." 2012 WL 6197086 at *1. It is not clear to this Court, however, that Diehl was working as an unpaid intern, and, in any event, "it is clear from the time records" that Diehl "contributed to the work product of this litigation." *Williams v. New York City Housing Authority*, 975 F. Supp. 317, 326 (S.D.N.Y. 1997). I therefore recommend that the plaintiffs be permitted to recover at least some amount of fees for her time.

A law student, however, should not be compensated at the same rate as a law school graduate. Rather, "[a] law student's time is compensable in an award of attorney fees at the same rate as a paralegal." *Williams*, 975 F. Supp. at 326. Accordingly, I recommend that Diehl's work be compensated at a paralegal rate of $100/hour. (*See infra*.)

### 5.   **Paralegal Rates**

The Firm requests rates of $165 per hour, $155 per hour, and $80 per hour for paralegals Fitti, Ryan, and Keltz, respectively. Fitti has an associate's degree (currently pursuing a bachelor's degree) and an unknown level of experience. (*See* Kimmel Decl., in *Reed v. Allied Interstate, Inc.*, No. 12 Civ. 1961 (Dkt. 20), at ¶ 27.) Ryan has 10 years of experience as a paralegal, and an associate's degree. (*See* Kimmel Decl., in *Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916 (Dkt. 17), at ¶ 27.) Keltz has a bachelor's degree and an unstated level of experience. (*See id.*, at ¶ 28.)

13

Following the relevant precedent in this Court, I recommend that the paralegals with stated rates at or over $100 per hour be compensated at $100 per hour, and that Keltz be awarded his requested rate of $80 per hour. *See O'Toole*, 2012 WL 6197086 at *1 (awarding $100/hour to Fitti and Ryan); *Reith*, 2012 WL 5458007 (awarding $100/hour for Fitti and Ryan and $75/hour for Keltz); *Ryan*, 2012 WL 3217853 at *6 (awarding $100/hour for Ryan and Fitti, and $80/hour for Keltz).

In sum, I recommend that the attorneys and staff at the Kimmel Firm be compensated at the following reduced rates:

> Partner:
> Kimmel – $300/hour
>
> Associates:
> Bennecoff – $225/hour
> Patterson – $225/hour
> Troccoli – $225/hour
> Kelleher – $200/hour
> Gentilcore – $175/hour
> Ginsburg – $175/hour
>
> Law Clerks:
> Allen – $125/hour
> Ferris – $125/hour
>
> Summer Associate/Intern
> Diehl – $100/hour
>
> Paralegals:
> Fitti – $100/hour
> Ryan – $100/hour
> Keltz – $80/hour

**B.      Reasonable Number of Hours**

The Firm has submitted extremely detailed time records, but that very detail often hides exaggeration and excess. For example, in each of these cases, Kimmel Firm attorneys and staff

14

have billed multiple entries of "0.1 hour" – often several on one day – for very brief, mundane

tasks such as emailing a document, e-filing, or receiving a notice of appearance or other

notification from the Court's automated Electronic Case Filing ("ECF") system.  This excessive

specificity appears designed to inflate the total number of hours billed, by attributing a separate

6 minutes to each brief task.  Further, when each of the attorneys or staff who are parties to an

exchange of extremely brief emails engage in this practice, the result is 12 minutes or more

billed for communications that likely took one or two minutes, if not less.  Having carefully

reviewed the bills in these actions, I respectfully recommend that, in the exercise of the Court's

discretion, such apparently inflated entries be either stricken or reduced, as set out below.  *See*

*Ryan*, 2012 WL 3217853 at *7 (striking multiple entries for receiving ECF notifications).

I further recommend that the Court deduct or reduce time entries with vague descriptions

that are "insufficient to allow the Court to determine what . . . tasks the attorneys were actually

performing, and therefore whether the amount of time expended was reasonable."  *Thai-Lao*

*Lignite*, 2012 WL 5816878 at *10.  In this regard, the Court notes that the answer to the practice

of inflating a bill by breaking out tasks requiring minimal time into multiple 0.1-hour billing

entries is *not* simply to lump those entries together into a single "block-billed" entry, and then to

charge the same amount.  This is exactly what the Kimmel Firm, at times, appears to have done,

clustering two or three small tasks, for example, into a block-billed entry, and then billing the

entire entry at 0.2 or 0.3 hours.[5]  This, too, is a potential method for hiding excess, as it is

---

[5] For example, in one instance, Ginsburg billed 0.2 hours (a) to receive a document by
email from Kimmel and then (b) to forward the same document to Keltz (*see* Bill of Costs, in
*Harris v. Allied Interstate, Inc.*, No. 12 Civ. 2812 (Dkt. 18), at 2), strongly suggesting that the
"0.2" number resulted from his attributing a separate 0.1 hour to each email.  As another
example, in some bills, Kimmel separately recorded 0.2 hours for reviewing a draft complaint,
and another 0.1 hour for emailing his revisions to the associate who had done the drafting.  (*See,*

15

difficult for the Court to discern from block-billed entries whether any of the listed tasks might actually have required the time necessary to justify the total amount billed.

The Court should also deduct or reduce entries where work should have been performed by a lower-billing employee – for example, if an attorney conducted paralegal tasks like compiling a table of authorities, or if the revision of a form submission was performed by a relatively senior attorney without any apparent increase in efficiency.

Finally, in cases where the offer of judgment covers fees and costs "up to" the date of the offer only, the Court should deduct any entries that post-date the offer of judgment.

The specific amount of time that, in this Court's view, should be deducted for each of these reasons is set out below, with respect to each individual case.

### C.   Costs

As for costs, the plaintiffs in these cases should, as a general matter, recover their $350 filing fees and any $200 fees for *pro hac vice* admission that are reflected on the Court's docket.

The plaintiffs, however, should not be permitted to recover their attorneys' travel costs. *See Ryan*, 2012 WL 3217853 at *8 (denying travel costs because Allied "is a company with a national presence, and counsel's travel expenses are a result of plaintiffs' choice to litigate these cases in the Southern District of New York while being represented by a firm based in Ambler,

---

*e.g.,* Bill of Costs, in *Robinson v. Allied Interstate, Inc.*, No. 12 Civ. 4475 (Dkt. 13, Ex. A), at 2.) In other cases, though, Kimmel block-billed the same total of 0.3 hours for the same tasks, without specifying how much of that time, if any, he was attributing to the brief task of sending the document by email. (*See, e.g.,* Bill of Costs, in *Bradshaw v. Allied Interstate, Inc.*, No. 12 Civ. 4235 (Dkt. 15, Ex. A), at 1 (Kimmel entry block-billing 0.3 hours to "Review and Revise complaint, Email complaint to [Ginsburg] with revised complaint for filing").) Overall, the similarity of the block-billed and separately-billed entries that have been presented for the Court's review raises the strong inference that, even when they block-billed, the Kimmel Firm's attorneys and staff habitually used a practice of attributing a full 0.1 hour to sending and receiving every brief email.

16

Pennsylvania"). In this regard, the Court notes that, as it is recommending that the Kimmel Firm's rates be set at levels consistent with rates awarded to *in-district* counsel on FDCPA cases, disallowing travel costs will not result in a double reduction of counsel's fees. If an out-of-district attorney sought to charge rates that were markedly lower than those charged within the forum district, then a reasonable paying client might well understand that such savings would come at the expense of travel costs. No reasonable paying client, however, would choose to pay in-district attorney rates, and then, in addition, pay for the out-of-district attorney to travel into the district. Accordingly, to the extent the Firm seeks recovery for its travel costs (or, for that matter, attorneys' fees for travel time into the district), I recommend that such costs (or fees) be denied.

In several of the cases before this Court, the Firm also requests reimbursement for costs attributed to copying and postage, always listed as $26.[6] Kimmel declares, under penalty of perjury, that the Firm incurred those costs for "expenses associated with postage and copying" on the particular plaintiffs' behalf. (*See, e.g.*, Kimmel Decl., in *Roop v. Allied Interstate, Inc.*, No. 12 Civ. 3442 (Dkt. 11, Ex. B), at ¶ 34; Bill of Costs, in *Roop* (Dkt 11, Ex. A), at 2.) Kimmel, however, offers no documentary support for these statements, nor does he provide any explanation as to how the postage and copying costs in these different cases could always total to the exact same sum. Given this lack of documentation and the questionable accuracy of the figure provided, and given further that, in the majority of the fee petitions now pending before

---

[6] See Bill of Costs, in *Roop v. Allied Interstate Inc.*, No 12 Civ. 3442 (Dkt. 11, Ex. A), at 2; Bill of Costs, in *Smith v. Allied Interstate, Inc.*, No 12 Civ. 4279 (Dkt. 16, Ex. A), at 4; Bill of Costs, in *Paul v. Allied Interstate Inc.*, No 12 Civ. 4340 (Dkt. 20, Ex. A), at 5; Bill of Costs, in *Williams v. Allied Interstate Inc.*, No 12 Civ. 4429 (Dkt. 15, Ex. A), at 3.

the Court the Firm has seen fit to write off its purported copy and postage costs in their entirety,[7] I recommend that the Court deny compensation for the claimed copy and postage costs.

### D.    Calculation of the Lodestar and Total Award in Each Case

In the cases before the Court, there are no "rare and compelling circumstances" that warrant diverging from the presumptively-appropriate lodestar, *Perdue*, 130 S. Ct. at 1673, and I therefore recommend that, in each case, the plaintiffs be awarded attorneys' fees in the lodestar amounts, plus reasonable costs, as follows:

#### 1.    *Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916

Jean Barile ("Barile"), a resident of Fogelsville, Pennsylvania, seeks $5,427.16 in fees and costs. (*See generally* Pl. Mem (Dkt. 16); Bill of Costs (Dkt. 20).) For the reasons that follow, this Court respectfully recommends that Barile be awarded $2,590 in fees and $350 in costs, for a total award of $2,940.

In connection with *Barile*, Kimmel, the partner on the case, claims to have personally expended 4.8 hours of attorney time.[8] The Court, however, should deduct 1.6 hours for the 16 entries, of 0.1 hours each, that Kimmel recorded for reviewing ECF notifications. In a particularly egregious example of padding the bill, Kimmel, the highest billing attorney on this case, recorded five separate 0.1 hour entries on May 1, 2012 (or half an hour) for "receipt and review" of ECF notices, four of which were notices of appearance and one of which was Allied's corporate disclosure statement. The Court should deduct another 0.4 hours for other "0.1 hour"

---

[7] *See, e.g.*, Pl. Mem., in *Reed v. Allied Interstate, Inc.*, No. 12 Civ. 1961 (Dkt. 19), at 22 (stating that "Plaintiff has voluntarily not sought other costs (more than $100) consisting of copy charges, postage and telephone").

[8] The Firm takes pains to note that Kimmel deducted 0.1 hours in the exercise of billing discretion. (*See* Pl. Mem. (Dkt. 16), at 4 & n.1; Bill of Costs (Dkt. 20), at 2.)

18

entries that reflect what should have been mere seconds of work, specifically entries for

receiving an email from Allied on October 3, 2011, sending a complaint to two recipients for

review on January 19, 2012 (billed as two separate 0.1-hour entries), and reviewing the corporate

disclosure statement on May 1, 2012.[9]   Finally, I recommend that the Court deduct 0.1 hour

from the 0.2 hours that Kimmel claims to have spent on May 29, 2012, reviewing Allied's

Answer in this case.   While it was certainly reasonable for counsel to review all filed pleadings,

this was not the first time that Kimmel had reviewed an answer filed by Allied; indeed, prior to

Kimmel's review of the Answer in *Barile*, he had reviewed at least two such pleadings, in

*Zambrowski* and *Brasseaux*.  (*See* Answer, in *Zamborowski v. Allied Interstate, Inc.*,

No. 12 Civ. 955 (Dkt. 10) (filed May 4, 2012); Bill of Costs, in *Zamborowski* (Dkt. 23), at 7

(Kimmel entry from May 4, 2012 billing 0.2 hours for review of Answer); Answer, in

*Brasseaux v. Allied Interstate, Inc.*, No. 12 Civ. 1323 (Dkt. 10) (filed May 4, 2012); Bill of

Costs, in *Brasseaux* (Dkt. 15), at 9 (Kimmel entry from May 4, 2012 billing 0.3 hours for review

of Answer and accompanying ECF email).)  Moreover, as in those cases, Allied's Answer in

*Barile* consisted largely of formulaic denials, and should not have taken more than two or three

minutes to review.  I therefore recommend that the fee award compensate a total of 2.7 hours for

Kimmel.

Associate Bennecoff's time – which she claims totaled 7.7 hours – should be reduced as

follows:  On May 2, 2012, Bennecoff recorded one entry of 0.3 hours to prepare a Rule 26

disclosure, email it to Kimmel for approval, and receive Kimmel's approval, and she then

---

[9] This "review" of the corporate disclosure statement strikes this Court as especially redundant, as Kimmel recorded similar entries in other cases addressed in this Report and Recommendation, notwithstanding that all of these cases involve the identical defendant and thus, presumably, identical corporate disclosures.

recorded another entry of 0.1 hour for sending the document to opposing counsel. Based on how

Bennecoff has recorded her time in other matters, the Court's best understanding of these entries

is that she has billed 0.1 hour for each of the four itemized tasks.[10] The various emails, however,

should have taken minimal time, and thus the total time for the two entries should be reduced to

0.2 hours. The Court should also deduct 1.3 hours for similarly excessive separate entries, often

several in one day, for short emails (and in one case sending a fax) on June 15, 2012 (entries

totaling 0.6 hours), July 10 (entries totaling 0.3 hours), July 16 (entries totaling 0.1 hours), and

July 26, 2012 (entries totaling 0.3 hours). In addition, Bennecoff performed paralegal tasks,

such as preparing deposition notices or e-filing, on May 25 (0.1 hour) and July 26, 2012

(0.2 hours). That 0.3 hours should be compensated at the paralegal rate of $100 per hour.

Bennecoff also billed 0.8 hours for the revision of form submissions that should have been done

by a lower-billing attorney, and I recommend that his time should be compensated at the junior-

associate rate of $175 per hour. Finally, the 0.1 hour for e-filing on July 27 should be excluded

because the task could have been handled by a lower-billing co-worker, required only minimal

time, and post-dated the offer of judgment.

Junior Associate Ginsburg claims to have expended 2.3 hours of time on the *Barile* case,

but that total should be reduced as well. The 0.3 hours spent revising tables of contents and

authorities on July 26, 2012, should have been performed by a paralegal, and should therefore be

---

[10] *See, e.g.*, Bill of Costs, in *Brasseaux v. Allied Interstate, Inc.*, No. 12 Civ. 1323 (Dkt. 15), at 8 (entry regarding Rule 26 disclosures broken down as "Prepare Rule 26 Disclosure (0.2); Email exchange with [Kimmel] re: review of same (0.2); Email R. 26 Disclosures to Defendant's counsel (0.1)"); Bill of Costs, in *Lawrence v. Allied Interstate, Inc.*, No. 12 Civ. 2552 (Dkt. 15), at 4 (entry totaling 0.5 hours with description "Prepare Rule 26 disclosures (0.2); Email exchange with [Kimmel] re: R26 disclosures (0.2); Email Rule 26 Disclosures to Def's attorney (0.1)").

compensated at only $100/hour, and the two 0.1 hour entries earlier on the same day, for sending emails about the offer of judgment being accepted, are excessive and should be eliminated.

On the *Barile* case, paralegals Ryan and Keltz recorded 0.2 and 1.5 hours, respectively, which appear reasonable and should be accepted.

Based on the above, I recommend that the Court adopt a lodestar in this case of $2,590, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|------------|-------|------|----------------|
| Kimmel | 2.7 | $300/hour | $810 |
| Bennecoff | 5.0 | $225/hour | $1,125 |
| | 0.8 | $175/hour | $140 |
| | 0.3 | $100/hour | $30 |
| Ginsburg | 1.8 | $175/hour | $315 |
| | 0.3 | $100/hour | $30 |
| Ryan | 0.2 | $100/hour | $20 |
| Keltz | 1.5 | $80/hour | $120 |
| | | | **Total: $2,590** |

Plaintiff Barile is also entitled to costs in the amount of $350, representing the filing fee reflected on the Court's docket. Although Allied does not object to the additional costs, which represent a proportionate share of Kimmel's lodging costs for attending conferences in New York (shared with other cases), the Court should not allow those costs, not only for the reasons discussed above (*see supra*, Part(II)(C)), but also because the travel in question was particularly unjustified in this case. The Firm's own time records indicate that Bennecoff rebuffed Allied's offer to hold the conference by telephone. (*See* Bill of Costs (Dkt. 16), at 8 (entry for June 28,

21

2012).)  Having offered to eliminate the travel expense, Allied should not now be required to pay for it just because Kimmel opted to travel anyway.

> ### 2.    *Zamborowski v. Allied Interstate, Inc.*, No. 12 Civ. 955

Melanie Zamborowski ("Zamborowski"), a resident of Ormand Beach, Florida, seeks $7,141.00 in fees and costs.  (*See generally* Pl. Mem (Dkt. 22); Bill of Costs (Dkt. 23).)  For the reasons that follow, this Court respectfully recommends that Zamborowski be awarded $3,760 in fees and $550 in costs, for a total award of $4,310.

As an initial matter, Allied contends that Zamborowski's fee motion should be stricken because the case was originally assigned to the Honorable Laura Taylor Swain, U.S.D.J., and Zamborowski failed to comply with Judge Swain's Individual Practices by (1) not exchanging letters outlining Zamborowski's legal and factual positions on the question of attorneys' fees, and (2) not certifying that she had used her best efforts to resolve the issues informally. (See Def. Mem. (Dkt. 28), at 6-8.)  Allied, however, already raised the first of these objections in a letter to Judge Swain, requesting that Zamborowski's motion for fees be stricken, and Judge Swain denied the request.  (*See* Dkt. 29.)  While, on its second argument, Allied is correct that Zamborowski omitted the required certification, the Court should not now strike the motion for that reason.  Apart from the fact that this case is no longer before Judge Swain, striking the motion would only result in needless delay and duplication of effort, as Zamborowski could merely file the exact same motion again, in compliance with this Court's rules.

In the *Zamborowski* case, the Kimmel Firm seeks compensation for 7.5 hours of Kimmel's time.  The Court should, however, deduct 0.6 hours for the six separate entries, of 0.1 hour each, that Kimmel recorded for sending or receiving brief emails, such as an email confirming a deadline with opposing counsel, on January 25 and 30 2012.  Four more entries,

totaling 0.4 hours, for receipt of emails from ECF on February 10, 2012, should also be stricken. Additional ECF-email entries, from March 1 and 13, April 13, 20, and 26, and May 2, 4, 7, 8, 9, and 15, 2012, totaling 1.7 hours, should also be deducted.  Deducting these entries leaves 4.8 compensable hours for Kimmel.[11]

Bennecoff's time – which she claims totaled 7.6 hours – should be reduced by 1.1 hours. Specifically, 0.1 hour recorded on April 11, 2012, for receiving an email seeking an extension, and then another 0.1 hour for an email agreeing to the extension, where the same entry also lists, separately, 0.2 hours for internal emails about the extension, are excessive and should be stricken.  The 0.1 hour to email a pretrial statement on April 17, 2012, billed separately by Bennecoff from the 0.7 hours that she billed to prepare the statement, should similarly be stricken.  The entry from April 23, 2012 for 0.4 hours, which describes four brief emails about another request for an extension, is also excessive and I recommend that it be reduced to 0.1 hour.  Bennecoff's three separate records of 0.1 hours on May 2, 2012, for sending and receiving emails about the preliminary pretrial statement, are also excessive, and, especially in light of her many other entries for that day covering work on the same statement, these small time entries should be stricken.  Bennecoff's five entries of 0.1 hour on May 7, 2012, which separate out some small tasks, such as sending a confirmation email to the client that the offer of judgment was accepted, should be reduced by 0.2 hours.  Overall, I recommend that Bennecoff's compensable time be set at 6.5 hours.

---

[11] In this case, as in *Brasseaux*, addressed *infra*, I do not recommend deducting any time for Kimmel's review of Allied's Answer.  On this point, the Court is giving Kimmel the benefit of the doubt that, even though all of Allied's pleadings have consisted of little more than repeated denials of the plaintiffs' allegations,  it was reasonable for him to spend somewhat more time reviewing the first two answers filed by Allied in this Court.

23

Ginsburg's records show a total of 4 hours, but I recommend that this total be reduced by 0.3 hours for the three 0.1-hour entries for sending and receiving emails on January 25 and 31. Ginsburg should thus be compensated for 3.7 hours.

The Firm further seeks recovery for 0.1 hour recorded by Ryan, and 2.6 hours recorded by Keltz. Ryan's total appears reasonable, but Keltz's entries should be reduced by 0.1 hour to account for the excessive, separate 0.1-hour entry on April 30, 2012 for sending documents by email, where Keltz had already billed on the same day for preparing those documents.

Based on the above, I recommend that the Court adopt a lodestar in this case of $3,760, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 4.8 | $300/hour | $1,440.00 |
| Bennecoff | 6.5 | $225/hour | $1,462.50 |
| Ginsburg | 3.7 | $175/hour | $647.50 |
| Ryan | 0.1 | $100/hour | $10.00 |
| Keltz | 2.5 | $80/hour | $200.00 |
| | | | **Total: $3,760.00** |

Plaintiff Zamborowski is also entitled to $550 in costs, consisting of the $350 filing fee and $200 fee for *pro hac vice* admission reflected on the Court's docket.

### 3. *Campbell v. Allied Interstate, Inc.*, No. 12 Civ. 1315

Melissa Campbell ("Campbell"), a resident of Dayton, Ohio, seeks $7,029.50 in fees and costs. (*See generally* Pl. Mem (Dkt. 18); Bill of Costs (Dkt. 19).) For the reasons that follow, this Court respectfully recommends that Campbell be awarded $3,381.50 in fees and $550 in costs, for a total award of $3,931.50.

24

In *Campbell*, the Firm seeks compensation for 7.2 hours of Kimmel's time. In connection with this case, Kimmel recorded 20 entries of 0.1 hour for reviewing ECF notices, often including several separate such entries on a single day (*e.g.* five on February 24, 2012, and four on April 5, 2012). In the purported exercise of billing discretion, Kimmel has stricken one of these 20 entries and deducted 0.1 hours from his original billing total of 7.3 hours, leaving 1.9 hours billed to ECF emails. As in the other cases, however, these entries appear designed more to pad the bill than to reflect time actually and reasonably expended by Kimmel, the highest-billing attorney on this case; these entries should therefore be stricken. An additional entry, for June 4, 2012, lists 0.3 hours for Kimmel to receive an ECF email with Allied's Answer and to review the Answer itself. Review of the ECF email itself should not be compensated, and, as discussed above (*see supra*, Part II(D)(1)), I recommend that Kimmel be compensated for not more than 0.1 hour to review the largely formulaic Answer in this case.[12]  I therefore recommend that the entry of 0.3 hours be reduced to 0.1.

Six other 0.1 hour entries recorded by Kimmel, from January 6, January 11, February 6, February 13, and June 5, 2012, should also be stricken because they attribute too much time to very brief tasks; for example, Kimmel billed 0.1 hour for sending a letter to Allied on January 11, 2012, after Kimmel and Ryan billed, in separate entries, for preparing the same document, and Kimmel billed 0.1 hour each for brief emails to and from Defense counsel on February 6,

---

[12] The Court has already noted that the answers filed by Allied in these various cases tended to be highly formulaic, and thus capable of easy review. It should also be noted that, for the most part (and as was true in the *Black* case), Allied tended to extend the plaintiff an offer of judgment simultaneously with filing the answer. Given the pattern that these cases have followed, Kimmel was undoubtedly aware that the offers of judgment were likely to be accepted, providing an additional reason for the Court to be circumspect in compensating Kimmel for the seemingly excessive time he spent "reviewing" Allied's answers.

2012.  Several entries vaguely reference emails between Bennecoff and Kimmel, and between Bennecoff and Keltz, about an "upcoming conference." (*See, e.g.*, Bill of Costs (Dkt. 19), at 7-8.)  It appears that these emails were about whether Ginsburg could appear at a conference before Judge Sullivan and should have been brief or ministerial in nature. (*See id.*, at 8.)  Without more detail, then, this Court cannot say that it is reasonable for Bennecoff and Kimmel to each attribute 0.2 hours on May 10, 2012 to an "email exchange" about the "upcoming conference."  Instead, Kimmel should be compensated for only 0.1 hour for the topic.  Deducting these entries leaves 4.4 compensable hours for Kimmel.

Bennecoff claims that she spent 8.6 hours on the *Campbell* case, but some of that time should be deducted for the following reasons:  Bennecoff followed her usual practice of separating small tasks performed on one day into several small entries, such as, for example, six entries on April 17, 2012, two of which involved drafting specific documents and two of which involved simply sending the already-drafted documents to either Kimmel or defense counsel.  For another example, Bennecoff recorded 0.4 hours on April 3, 2012, for four back-and-forth emails with Allied, that, from her descriptions, seem like they should have taken less than 6 minutes *total*, not be billed at 6 minutes *each*.  In all, I recommend that the Court deduct 1.7 hours of Bennecoff's time for excessive entries involving sending or receiving (not drafting) simple emails or documents, on February 13, April 3 (four 0.1-hour entries), 17 (three 0.1-hour entries), 19, 26, and 27 (three 0.1-hour entries and half of the 0.2 hour entry), May 10, and June 25, 2012, and July 16, 2012.  In addition, the 0.4 hours that Bennecoff attributed to performing the non-lawyer tasks of revising tables of contents and authorities and e-filing should be compensated at the paralegal rate of $100 per hour.  Bennecoff's compensable time should thus be set at 6.6 hours at the rate of $225 per hour, plus 0.4 hours at $100 per hour.

26

Ginsburg's recorded time of 2.1 hours on the *Campbell* matter should be reduced by 0.3 hours for the three entries, on February 8, May 15, and June 25, 2012, that merely reflect clicking "send" on an email with an attachment. Ginsburg's compensable time should thus total 1.8 hours.

Ryan recorded 0.2 hours on the *Campbell* case, which is reasonable. The Firm also seeks reimbursement for 4.0 of the hours recorded by Keltz, but those recorded hours reflect excessive entries and should be reduced to 2.8 hours. Specifically, Keltz, too, adopted the practice of recording separate 0.1-hour or 0.2-hour entries – sometimes several on a single day – for sending or receiving brief emails, adding up to nine excessive entries of this type on February 13, April 3, 5, 6, and 27 (one 0.1-hour entry and half of a 0.2 hour entry), May 14, and June 5 and 12, 2012. The 0.5 hours spent preparing Ginsburg's motion for admission *pro hac vice* is also excessive for such a routine task, especially as Keltz had already performed the exact same task for Ginsburg in other cases; indeed, just two days earlier, Keltz had recorded 0.2 hours to draft such a a *pro hac vice* motion and proposed order in the *Zamborowski* case. (*See* Bill of Costs, in *Zamborowski v. Allied Interstate, Inc.*, No. 12 Civ. 955 (Dkt. 23), at 5 (entry from April 30, 2012 stating "Draft PHV motion for [Ginsburg] (0.1); Draft Proposed Form of Order (0.1)").) Given the routine and repetitive nature of such motions in these cases, only 0.2 hours for preparing the motion in the *Campbell* case should be allowed.

Based on the above, I recommend that the Court adopt a lodestar in this case of $3,381.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 4.4 | $300/hour | $1,320.00 |
| Bennecoff | 6.5 | $225/hour | $1,462.50 |
| | 0.4 | $100/hour | $40.00 |
| Ginsburg | 1.8 | $175/hour | $315.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| Keltz | 2.8 | $80/hour | $224.00 |
| | | | **Total: $3,381.50** |

Plaintiff Campbell is also entitled to reimbursement for the $350 filing fee. Although Ginsburg did not do meaningful work on this case after he was admitted *pro hac vice*, the $200 fee for his motion for that admission should also be reimbursed. Campbell was entitled to seek admission for her attorney, even though, in hindsight, such admission proved unnecessary.[13] Campbell should thus be awarded $550 in costs.

### 4.  *Black v. Allied Interstate, Inc.*, No. 12 Civ. 1321

Arthur Black ("Black"), a resident of Gray, Maine, seeks $5,029 in fees and costs. (*See generally* Pl. Mem (Dkt. 15); Bill of Costs (Dkt. 16).)  For the reasons that follow, this Court respectfully recommends that Black be awarded $2,312.50 in fees and $350 in costs, for a total award of $2,662.50.

Kimmel claims to have spent 6.9 hours of his time on the *Black* case.  On this case, however, Kimmel recorded 18 separate entries (totaling 1.8 hours), merely for receiving brief ECF notices, and those entries should be stricken.  An additional 0.4 hours should be deducted for 0.1-hour entries reflecting the sending or receiving of brief emails (likely mere seconds of

---

[13] For the same reason, I do not recommend the exclusion of time spent preparing Ginsburg's motion for admission *pro hac vice* in this case.

work) on January 3, February 13, and June 5, 2012 (two entries), and 0.2 hours should be deducted from the 0.3 hours that Kimmel purportedly spent reviewing Allied's highly standardized Answer, on June 4, 2012. Deducting these entries would leave 4.5 compensable hours for Kimmel.

The Firm seeks compensation for 3.4 hours of Bennecoff's time.  As in the above cases, Bennecoff frequently separated her records for a single day into several short entries, each reflecting very brief tasks, such as receipt of a document or emailing a brief instruction.  All told, 0.4 hours should be deducted for such excess entries on April 30, May 11, June 27, and June 29, 2012.  Bennecoff's June 27-29 records also indicate that she spent 0.6 hours performing tasks that should have been delegated to a non-lawyer, such as updating tables of contents or preparing a certificate of service, and 0.8 hours on updating the form memorandum and declarations with the details of this case – a task that could have been performed by a more junior lawyer.  That time should be billed at lower rates of $100 per hour (for non-lawyer work) and $175 per hour (for junior associate work).

The Firm requests compensation for 1.7 hours of Ginsburg's time, but 0.2 hours should be deducted to eliminate two 0.1-hour entries for sending and receiving documents by email on February 8 and February 13, 2012.  Ginsburg's compensable time should thus be reduced to 1.5 hours.

Ryan recorded 0.2 hours and Keltz recorded 1.6 hours, for which the Firm requests reimbursement (not including several other entries that it has deducted).  Keltz's entry from June 5, 2012, recording 0.1 hour for receiving an email should be stricken, but the paralegal time records otherwise appear reasonable.

Based on the above, I recommend that the Court adopt a lodestar in this case of $2,312.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 4.5 | $300/hour | $1,350.00 |
| Bennecoff | 1.6 | $225/hour | $360.00 |
| | 0.8 | $175/hour | $140.00 |
| | 0.6 | $100/hour | $60.00 |
| Ginsburg | 1.5 | $175/hour | $262.50 |
| Ryan | 0.2 | $100/hour | $20.00 |
| Keltz | 1.5 | $80/hour | $120.00 |
| | | | **Total: $2,312.50** |

Plaintiff Black is also entitled to costs in the amount of $350, representing the filing fee in this action, which is reflected on the docket. The Firm has submits no receipt or other documentation, however, supporting Black's request for $60 in train fare for Kimmel to attend a conference in New York, and that request should thus be denied, even if travel costs were to be reimbursed in general.

### 5.   *Brasseaux v. Allied Interstate, Inc.*, No. 12 Civ. 1323

Barbara Brasseaux ("Brasseaux"), a resident of Houston, Texas, seeks $7,518 in fees and costs. (*See generally* Pl. Mem (Dkt. 13); Bill of Costs (Dkt. 15, Ex. A).) For the reasons that follow, this Court respectfully recommends that Brasseaux be awarded $4,034 in fees and $350 in costs, for a total award of $4,384.

The Firm seeks compensation for a claimed 9.8 hours of Kimmel's time on the *Brasseaux* case. The Court should deduct 1.5 hours for Kimmel's 15 ECF-email entries. The Court should further deduct 1 hour for 10 entries in which Kimmel separately recorded 0.1 or

0.2 hours for each of a number of very brief tasks, such as sending or receiving documents or short emails; these entries were made on January 31, February 8, March 19 (three entries), April 2, April 9, May 4 (deducting 0.1 hour from each of two 0.2-hour entries), and May 7, 2012. Deducting these entries would leave 7.3 compensable hours for Kimmel.

As for associate time, the Firm seeks to recover for 7.4 hours that Bennecoff purportedly spent on the *Brasseaux* matter. Bennecoff, though, followed her usual practice of separating brief tasks into multiple 0.1-hour entries per day, inflating the daily bill for tasks that likely required only a minute or two. The Court should deduct 1.5 hours from her time, to account for such excessive entries on March 30 (three entries), April 2 (two sub-entries), April 9 (two sub-entries), April 12 (two sub-entries), April 23 (two sub-entries), May 2, May 7, and May 23, 2012 (two sub-entries). An entry for 0.1 hours on May 4, 2012 states "not billed – administrative," but is apparently still erroneously included in the requested total, and should also be deducted. One hour of the work Bennecoff performed preparing the fee application on May 23 could have been handled by a lower-billing lawyer and should be compensated at $175 per hour, and the 0.1 hour to draft the certificate of service, a non-lawyer task, should be compensated at $100 per hour.

The Firm requests compensation for 2.3 hours of Ginsburg's time, but I recommend that 0.2 hours be deducted for entries that merely reflect sending or receiving email on February 8 and February 13, 2012. Ginsburg's compensable time should thus be reduced to 2.1 hours.

The Firm also requests compensation for 0.1 hours of Ferris's time, which was spent reviewing an email from Bennecoff regarding discovery on May 3, 2012. The Kimmel Firm, however, has written off the half-hour that Ferris actually spent preparing discovery requests because they were not sent, and Ferris performed no other work on this case. I recommend that

31

the Court not compensate the Firm for Ferris's time, when his only contribution to this case was to read an email.

Ryan recorded 0.1 hour and Keltz recorded 2.9 hours on this case, for which the Firm requests reimbursement (not including several other entries that the Firm has deducted). Keltz's total should be reduced by 0.1 hour to reflect an excessive entry on April 9, 2012, where, having already billed 0.1 on the same day for what appears to be a brief email, Keltz then billed another 0.1 hour to send a document (not drafted by him) to opposing counsel.

Based on the above, I recommend that the Court adopt a lodestar in this case of $4,034, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 7.3 | $300/hour | $2,190.00 |
| Bennecoff | 4.7 | $225/hour | $1,057.50 |
|  | 1.0 | $175 | $175.00 |
|  | 0.1 | $100 | $10.00 |
| Ginsburg | 2.1 | $175/hour | $367.50 |
| Ferris | -- | -- | -- |
| Ryan | 0.1 | $100/hour | $10.00 |
| Keltz | 2.8 | $80/hour | $224.00 |
|  |  |  | **Total: $4,034.00** |

Plaintiff Brasseaux is also entitled to costs in the amount of $350, the amount of the filing fee reflected on the Court's docket.

### 6. *Reed v. Allied Interstate, Inc.*, No. 12 Civ. 1961

Angeleque Reed ("Reed"), a resident of Wheaton, Maryland, seeks $5,469 in fees and costs. (*See generally* Pl. Mem (Dkt. 19); Bill of Costs (Dkt. 23).) For the reasons that follow,

32

this Court respectfully recommends that Reed be awarded $1,855 in fees and $550 in costs, for a total award of $2,405.

The Firm seeks compensation for 6.4 hours of Kimmel's time spent on the *Reed* matter. The Court should deduct 2.5 hours for the 25 separate entries (often several in one day) reflecting receipt of brief ECF notifications. The Court should also strike an excessive 0.1-hour entry on June 4, 2012 for a vaguely described email to Gentilcore, and the 0.1 hour entry on February 6, in which Kimmel recorded sending himself an email message. While an attorney may legitimately use self-addressed emails to make notes regarding a case, especially while on the road, Kimmel has provided no information on the topic or length of this email, nor has he even described it as being substantive in nature. Kimmel billed 1.5 hours of travel time to and from the Rule 16 conference, or half of the 3 hours that he claims the travel actually took.[14] In this case, though, as in other cases discussed herein, I recommend that travel time, like counsel's travel expenses, not be charged to Allied at all, as it was not required that the plaintiff choose either an out-of-district attorney or a New York forum, and it was these choices that led to travel being required. Deducting these entries leaves 2.2 compensable hours for Kimmel.

The Firm next seeks compensation for 3 hours of Patterson's time. The Court should deduct 0.1 hour for an entry on February 6, 2012, that reflects the mere receipt of an email from Kimmel instructing Patterson and Gentilcore to prepare a complaint, and 0.1 hour from entries on February 15, 2012 that unreasonably separate, into two entries, email correspondence with a

---

[14] Where recovery for travel time has been allowed in this Court, the Court has typically reduced the time by half. *See, e.g., Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc.*, No. 10 Civ. 6036 (RMB) (JCF), 2012 WL 3031471, at *7 (S.D.N.Y. July 25, 2012) ("Although it is within a district court's discretion to compensate travel time at the full hourly rate, courts in the Second Circuit often reduce attorneys' fees for travel time by 50 percent." (internal citations omitted)).

paralegal regarding voicemails left for plaintiff Reed. In addition, Patterson's recorded time of 1.4 hours to review the client's file and make "significant revisions" to the draft complaint should be reduced to 1 hour, at a maximum; this Court has reviewed the draft complaint and finds it remarkably similar to the complaints filed in the other actions addressed in this Report and Recommendation. The Firm should thus be compensated for a total of 2.4 hours for Patterson's work on the matter.

The Firm requests compensation for 2.8 hours of Gentilcore's time, the largest single chunk of which is 0.6 hours on May 14, 2012 devoted to "Research into Judge Forrest to decide whether to proceed in front of magis." This is not the type of "research" for which Allied should be required to pay, and I recommend that it be disallowed. In addition, I recommend that the 0.4 hours recorded by Gentilcore for attending a court conference be stricken, as Kimmel also billed for attending that conference, and the Firm has made no showing that attendance by two attorneys was required. These deductions would bring Gentilcore's total compensable time to 1.8 hours.

Fitti recorded 3.6 hours. The Court should deduct 0.1 hours for an entry on March 8, 2012, that is vague and appears redundant of tasks already separately billed by Fitti on the same date, and another 0.1 hours from June 1, 2012, that overstates the time required to leave a message for the plaintiff. I therefore recommend that Fitti's total time be set at 3.4 hours.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,915, calculated as follows:

34

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 2.2 | $300/hour | $660 |
| Patterson | 2.4 | $225/hour | $540 |
| Gentilcore | 1.8 | $175/hour | $315 |
| Fitti | 3.4 | $100/hour | $340 |
| | | | **Total: $1,855** |

Plaintiff Reed is also entitled to costs in the amount of $550, the sum of the filing fee and a fee for *pro hac vice* admission reflected on the Court's docket. The requested $75 in travel expenses should, however, be denied. Even if, as a general matter, the Court were to allow for the recovery of counsel's travel expenses, the Firm, in this case, has submitted no documentation, nor even a sworn statement, as to the source of the $75 figure, making it impossible for this Court to deem it reasonable.

### 7.    *Thompson v. Allied Interstate, Inc.*, No. 12 Civ. 2291

Plaintiff Rachelle Thompson ("Thompson"), a resident of San Antonio, Texas, seeks $3,472.50 in fees and $550 in costs. (*See generally* Pl. Mem (Dkt.16); Bill of Costs (Dkt. 22, Ex. A).) Allied has failed, for more than five months, to oppose Thompson's fee application, which was filed on August 8, 2012, and refiled to correct an error on August 9, 2012. Despite the lack of opposition, however, the Court must still review the application to ensure its reasonableness. *See Congressional Sec., Inc. v. Fiserv Sec., Inc.*, Nos. 02 Civ. 3740 (RJH), 02 Civ. 7914 (RJH), 02 Civ. 6593(RJH), 02 Civ. 8364 (RJH), 2004 WL 829028, at *4 (S.D.N.Y. Apr. 15, 2004) (finding fees reasonable on unopposed motion only after "review[ing] the billing records submitted by Respondent's counsel"). Upon review of Thompson's moving

submissions, and for the reasons that follow, I respectfully recommend that she be awarded $1,575 in fees and $350 in costs, for a total award of $1,925.

The Kimmel Firm seeks compensation for 2.2 hours of Kimmel's time expended on the *Thompson* matter, of which 1.5 hours (nearly 70 percent) reflects receipt of ECF emails, and another 0.1 hour reflects receipt of the offer of judgment from Allied. Indeed, Kimmel appears to have done little or no substantive work in this case, after the initial half-hour case review. Under the circumstances, I recommend that only 0.6 hours of Kimmel's time be compensated.

Patterson recorded 4.1 hours, but some of these entries are excessive on their face. For example, on June 11, 2012, Patterson logged seven separate 0.1-hour entries for each of several email or voicemail communications from plaintiff Thompson (generally recorded as concerning "info from client about the case"), even though reviewing an email or voicemail message generally takes only a minute or two, if that. With respect to these entries, as well as other entries for brief emails on February 27, March 19, June 18, and July 23, 2012, I recommend that the Court deduct a total of 0.9 hours from Patterson's time.

The Firm requests compensation for 2.5 hours of Gentilcore's time, including 0.2 hours on a pre-motion letter regarding a motion to strike that was ultimately unsuccessful, 0.1 hour for the entry "client accepted [Offer of Judgment]," and 2.2 hours for reviewing the bill and preparing it for the fee application. As the Firm apparently realized when it wrote off the rest of the time Gentilcore spent on the unsuccessful motion to strike, time spent on that motion should be excluded. *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 05256 (KMW) (DF), 2012 WL 5816878, at *9 (S.D.N.Y. Nov. 14, 2012) ("As a general matter, the reasonable number of hours used for a lodestar calculation should exclude any hours dedicated to severable unsuccessful claims." (citations and internal quotations

36

omitted)).  While it may well be that a client's acceptance of an offer of judgment should not require 6 minutes of attorney time, the Court will give Gentilcore the benefit of the doubt on that time entry, and not recommend a deduction.  Gentilcore's final entry, though – of 2.2 hours for review of the bill – should be reduced as excessive, as the same task in other cases before the Court has generally taken attorneys from the Firm about half an hour.  (*See, e.g.*, Bill of Costs, in *Brasseaux v. Allied Interstate, Inc.*, No. 12 Civ. 1323 (Dkt. 15), at 11 (Bennecoff attributing 0.5 hours to "Review invoice for services rendered, redact as necessary, and eliminate entries in billing judgment"); Bill of Costs, in *Mason v. Allied Interstate, Inc.*, No. 12 Civ. 4318 (Dkt. 15, Ex. A), at 6 (Bennecoff billing 0.3 hours for review of bill).)  Again giving Gentilcore the benefit of the doubt in this case (especially because the fee application in this case was unopposed), I recommend that his time for this task merely be cut in half, to 1.1 hours.  In total, then, I recommend that the Court compensate the Firm for a total of 1.2 hours of Gentilcore's time.

Allen, a law clerk, recorded 1.4 hours preparing the Complaint on February 27, 2012. That time was reasonably expended.

The Firm requests compensation for 2.8 hours of Fitti's time.  Although 0.1 hours should be deducted for an excessive entry on July 17, 2012, Fitti's time otherwise appears reasonable. Ryan recorded 0.2 hours, which also appears reasonable.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,597.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 0.6 | $300/hour | $180 |
| Patterson | 3.2 | $225/hour | $720 |
| Gentilcore | 1.2 | $175/hour | $210 |
| Allen | 1.4 | $125/hour | $175 |
| Fitti | 2.7 | $100/hour | $270 |
| Ryan | 0.2 | $100/hour | $20 |
| | | | **Total: $1,575** |

Plaintiff Thompson also requests $550 in costs, consisting of the filing fee and a fee for *pro hac vice* admission. The docket, however, reflects only the filing fee, and thus it seems that no *pro hac vice* motion was ever actually filed in this case. Thompson should therefore be awarded only $350 in costs.

### 8.   *Waldran v. Allied Interstate, Inc.*, No. 12 Civ. 2380

Plaintiff Joshua Waldran ("Waldran"), a resident of Fort Worth, Texas, seeks $8,085 in fees and costs. (*See generally* Pl. Mem (Dkt. 20); Bill of Costs (Dkt. 30, Ex. A).) For the reasons that follow, this Court respectfully recommends that Waldran be awarded $3,855 in fees and $550 in costs, for a total award of $4,405.

The Firm seeks compensation for 6.5 hours of Kimmel's time in connection with the *Waldran* matter. I recommend that 2.1 hours be deducted for 21 separate entries recording receipt of ECF emails. Additional time should be deducted for other entries that separate the sending or receiving of brief emails into individual 0.1-hour entries on June 11 (two entries), June 21, June 27 (three entries), and July 20, 2012. An entry on June 5, 2012, recording 0.4 hours for "Email to Defense Counsel about conference" is too vague to explain why sending this

38

email took so long, and I therefore recommend that Kimmel's time for this entry be halved, to 0.2 hours. In total, I recommend that Kimmel's compensable time be reduced to 3.5 hours.

Patterson recorded 8.8 hours, but, once again, that total is inflated by her apparent practice of billing every separate email as its own 6-minute event, regardless of how long the email, as described, would have reasonably taken to send or receive, and regardless of how many other similar entries she made on the day in question. I recommend that Patterson's time be reduced by 1.6 hours for excessive 0.1-hour entries on February 29, March 13, May 22, June 1, June 6, June 8, June 13 (two entries), June 14 (two entries), June 18, June 27, July 12 (two entries), and July 25, 2012 (two entries). In total, I recommend that Patterson's compensable time be reduced to 7.2 hours.

The Firm requests compensation for 4.3 hours of Gentilcore's time, which he mostly recorded in a single, block-billed 3-hour entry on July 26, 2012. The block billing in that entry makes it difficult for the Court to determine whether the time reflects excessive resources devoted to reviewing the bill and other simple tasks, and I therefore recommend a reduction of 0.3 hours (10 percent) from the combined entry. Gentilcore's expenditure of 1.1 hours on June 8 regarding a motion to strike should not be compensated, as that motion was premature and unsuccessful. I therefore recommend that, in total, the Firm be compensated for 2.9 hours of Gentilcore's time on this case.

Fitti recorded 4 hours of time on this matter, but she also adopted the practice of separately billing individual emails into multiple entries per day. Her time should be reduced by 0.5 hours for excessive entries on May 22 (0.1 hour deducted of 0.2 hours to file motion), June 6 (two 0.1-hour entries), June 8, and June 18, 2012.

39

The Firm's requests for compensation for 0.5 hours of Bennecoff's time, 0.4 hours of Ginsburg's time, 0.2 hours of Ryan's time, and 1 hour of Allen's time are all well-documented and appear reasonable, and I therefore recommend that they be allowed.

Based on the above, I recommend that the Court adopt a lodestar in this case of $3,855, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 3.5 | $300/hour | $1,050.00 |
| Patterson | 7.2 | $225/hour | $1,620.00 |
| Bennecoff | 0.5 | $225/hour | $112.50 |
| Gentilcore | 2.9 | $175/hour | $507.50 |
| Ginsburg | 0.4 | $175/hour | $70.00 |
| Allen | 1.0 | $125/hour | $125.00 |
| Fitti | 3.5 | $100/hour | $350.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| | | | Total: $3,855.00 |

Plaintiff Waldran is also entitled to $550 in costs, consisting of the filing fee and a fee for *pro hac vice* admission, both of which are reflected on the Court's docket. For the reasons explained above, I recommend that travel-related costs not be awarded.

### 9.    *Lawrence v. Allied Interstate, Inc.*, No. 12 Civ. 2552

Plaintiff Dennis Lawrence ("Lawrence"), a resident of Corpus Christi, Texas, seeks $4,075 in fees and costs.  (*See generally* Pl. Mem (Dkt. 13); Bill of Costs (Dkt. 14).)  The Kimmel Firm has submitted time records in the *Lawrence* case that fail to indicate the dates on which the listed work was performed.  While this failure could be grounds for a percentage reduction, *see Spalluto v. Trump Intern. Hotel & Tower*, No. 04 Civ. 7497 (RJS) (HBP),

40

2008 WL 4525372, at *17, (S.D.N.Y. Oct. 2, 2008), this Court has reviewed the records and finds that the absence of dates does not materially affect the Court's ability to determine whether the time recorded is reasonable. This is especially so given the overall similarity of the records submitted in this case to those in the other cases addressed in this Report and Recommendation. For the reasons that follow, I respectfully recommend that Lawrence be awarded $2,197.50 in fees and $550 in costs, for a total award of $2,747.50.

Kimmel seeks to be compensated for 3.6 hours of his work on the *Lawrence* case, but 1.5 hours should be deducted for the 15 ECF-email entries, and another 0.1 hour should be deducted from the time Kimmel claims to have spent, on June 13, 2012, reviewing Allied's Answer. This would leave 2.0 compensable hours.

Bennecoff seeks compensation for 5.6 hours time. The Court should deduct 0.4 hours for brief entries that reflect merely sending or receiving emails on pages four, five, and six of the submitted Bill of Costs. In addition, I recommend that the 0.4 hours that Bennecoff spent doing paralegal-level tasks such as updating tables of contents and authorities be compensated at the paralegal rate of $100 per hour.

Ginsburg's recorded time of 2.2 hours on this case appears reasonable, with the exception of an entry on page one of the Bill of Costs, which records 0.1 hour for merely sending a complaint to Keltz. Deducting that one entry, I recommend that Ginsburg's compensable time be reduced to 2.1 hours.

The Firm requests compensation for 1.1 hours of Keltz's time, from which 0.1 hours should be deducted for an entry on page two of the Bill of Costs that apparently reflects mere receipt of an email attaching the complaint for filing. Diehl's 0.1 hours of requested time and Ryan's 0.2 hours are both reasonable and substantiated, and should be compensated.

Based on the above, I recommend that the Court adopt a lodestar in this case of

$2,197.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|------------|-------|------|----------------|
| Kimmel | 2.0 | $300/hour | $600.00 |
| Bennecoff | 4.8 | $225/hour | $1,080.00 |
| | 0.4 | $100/hour | $40.00 |
| Ginsburg | 2.1 | $175/hour | $367.50 |
| Diehl | 0.1 | $100/hour | $10.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| Keltz | 1.0 | $80/hour | $80.00 |
| | | | Total:  $2,197.50 |

Plaintiff Lawrence is also entitled to $550 in costs, consisting of the filing fee and a fee

for *pro hac vice* admission, which are both reflected on the Court's docket.

### 10.  *Harris v. Allied Interstate, Inc.*, No. 12 Civ. 2812

Plaintiffs Luke and Amanda Harris ("the Harrises"), residents of Gatewood, Missouri,

request $4,608.50 in fees and costs.  (*See generally* Pl. Mem (Dkt. 14); Bill of Costs (Dkt.18).)

For the reasons that follow, I respectfully recommend that the Harrises be awarded $2,186 in

fees and $350 in costs for a total award of $2,536.

Kimmel seeks compensation for 4 hours of work on the *Harris* case.  The 1.4 hours

devoted to receiving ECF notices should be deducted.  An additional 0.5 hours should be

deducted for 0.1-hour entries reflecting sending or receipt of brief emails on March 26, March

28, April 2, May 1, and June 19, 2012.  Finally, Kimmel's recorded time of 0.2 hours for

reviewing Allied's Answer on July 19, 2012, should be reduced to 0.1 hour.  Overall, I

recommend Kimmel's total compensable time be set at 2 hours.

42

The Firm also requests compensation for 6 hours of Bennecoff's time.  I recommend that the Court deduct 0.7 hours for excessive entries for brief tasks or events on May 2, May 22, June 8, June 11, June 18 (0.1 hour deducted from 0.2-hour entry, in which Bennecoff billed more time for reviewing and approving a draft letter than Keltz took to draft it), and June 19, 2012 (two 0.1-hour entries).  On June 19, 2012, Bennecoff spent at least 1 hour doing paralegal-level tasks such as revising tables of contents, preparing a notice of motion, changing captions, and e-filing.[15]  That hour should be compensated at $100 per hour.

Ginsburg recorded 2.7 hours in connection with the *Harris* case.  Of that time, I recommend a deduction of 0.4 hours for entries on March 28 and April 4, 2012 that reflect merely sending or receiving (rather than drafting or reviewing) a document or email.

The 0.2 hours requested for Ryan appear reasonable.  Keltz' time, however, should be reduced from 1.5 hours to 1.2 hours to account for excessive 0.1-hour entries on April 4, May 22, and June 13, 2012.

Based on the above, I recommend that the Court adopt a lodestar in this case of $2,186, calculated as follows:

---

[15] It is difficult to determine exactly how much time was devoted to some of these tasks as they appear in block-billed entries with attorney-level tasks.

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 2.0 | $300/hour | $600.00 |
| Bennecoff | 4.3 | $225/hour | $967.50 |
| | 1.0 | $100/hour | $100.00 |
| Ginsburg | 2.3 | $175/hour | $402.50 |
| Ryan | 0.2 | $100/hour | $20.00 |
| Keltz | 1.2 | $80/hour | $96.00 |
| | | | Total:  $2,186.00 |

The Harrises should also be awarded $350 in costs, representing the filing fee reflected on the Court's docket.

### 11.   *Turner v. Allied Intersate, Inc.*, No. 12 Civ. 3208

Plaintiff Bessie Turner ("Turner"), a resident of Baltimore, Maryland, seeks $4,075 in fees and costs. (*See generally* Pl. Mem (Dkt. 17); Bill of Costs (Dkt. 18).)  For the reasons that follow, this Court respectfully recommends that Turner be awarded $1,665 in fees and $550 in costs, for a total award of $2,215.

Kimmel seeks compensation for 4.4 hours of work on the *Turner* case.  I recommend that 1.8 hours be deducted for 18 separate ECF-email entries.  An additional 0.2 hours should be deducted from the time Kimmel recorded on December 22, 2011, as he apparently separated each email sent or received that day into its own 6-minute entry.  The June 11, 2012, entry for 0.1 hour reflecting that Kimmel, the most senior attorney on the case, checked the Judge's individual rules regarding conference attendance, should also be stricken, and the 0.2 hours that Kimmel recorded on June 29, 2012, for reviewing Allied's Answer should be reduced to 0.1 hour.  Overall, I recommend Kimmel be compensated for a total of 2.2 hours.

44

Patterson's requested 1.5 hours should be reduced to 1.3 hours, after deductions for two excessive 0.1-hour entries on April 17, 2012.

The Firm requests compensation for 1 hour of Troccoli's time.  Troccoli's time should be reduced by the 0.1 hour she attributed to the administrative and extremely brief task of advising a paralegal to prepare a letter of representation.

The Firm requests compensation for 1.2 hours of Allen's time, spent drafting the Complaint.  That time is reasonable and properly compensable.

Fitti recorded 3.8 hours on the *Turner* case.  The Court should deduct 0.1 hour for the separate entry, on June 18, 2012, informing Kimmel that she had drafted a letter.  Fitti also attributed 0.5 hours on May 1, 2012, to drafting routine documents, such as a waiver of service.  These documents vary little, if at all, from case to case, and should not have taken half an hour to prepare.  Indeed, the billing entries for the same tasks in other cases are generally lower, if not written off entirely.  (*See, e.g.*, Bill of Costs In *Waldran v. Allied Intersate, Inc.*, No. 12 Civ. 2380 (Dkt. 26), at 2 (Fitti's entry of 0.4 hours for "Drafted Notice/Waiver, mailed Complaint out for service" written down to 0.2 hours).)  Under these circumstances, I recommend that this entry be reduced to 0.2 hours.  On the same day, Fitti billed 0.3 hours (reduced from 0.5 hours) to receive a scheduling order, update the file, and calendar the dates.  Those tasks should have taken no more than 0.1 hour.  Fitti's total compensable time should therefore be set at 3.2 hours.

Allen recorded 1.2 hours, all of which was devoted to drafting the Complaint.  1.1 hours of that time should be compensated, deducting 0.1 hour spent, on April 13, 2012, merely emailing the draft to Kimmel Firm associates for review.

Ryan recorded 0.4 hours in three separate entries on November 22, 2012. I recommend that his time be reduced to 0.1 hours, to exclude 0.3 hours that he recorded for nothing but sending three emails.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,665, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 2.2 | $300/hour | $660.00 |
| Patterson | 1.3 | $225/hour | $292.50 |
| Troccoli | 0.9 | $225/hour | $202.50 |
| Fitti | 3.2 | $100/hour | $390.00 |
| Ryan | 0.1 | $100/hour | $10.00 |
| Allen | 1.1 | $100/hour | $110.00 |
| | | | Total: $1,665.00 |

Plaintiff Turner should also be awarded $550 in costs, representing the sum of the fees reflected on the Court's docket.

### 12.   *Banks v. Allied Interstate, Inc.*, No. 12 Civ. 3357

Plaintiff Michael Banks ("Banks"), a resident of Phoenix, Arizona, seeks $3,417 in fees and costs. (*See generally* Pl. Mem (Dkt. 14); Bill of Costs (Dkt. 15).) For the reasons that follow, this Court respectfully recommends that Banks be awarded $1,650 in fees and $350 in costs, for a total award of $2,000.

The time entries for Kimmel, Bennecoff, and Ginsburg suffer from the same types of deficiencies as are described in the above-discussed cases. Having reviewed the entries carefully, this Court recommends that the requested time be reduced as follows:

46

Kimmel's claimed 3.9 hours of work on the *Banks* matter should be reduced at the outset by 1.5 hours for 13 ECF-email entries, as well two excessive 0.1-hour entries on March 19 and May 1, 2012. In addition, the Court notes that, on July 16, 2012, Kimmel recorded an entry of 0.4 hours – *i.e.*, 24 minutes – to receive and review a deposition notice and a formulaic offer of judgment, and to "attempt" to contact his client. I recommend that this entry be reduced to 0.2 hours, and I further recommend that a separate entry on the same day, in which Kimmel recorded 0.2 hours for reviewing Allied's standardized Answer, be reduced to 0.1 hour. Overall, I recommend that Kimmel's compensable time be reduced to 2.1 hours.

Bennecoff's requested time of 2.4 hours should be reduced by the 0.1 hour she recorded for merely sending a document on July 16, 2012, leaving Bennecoff's compensable total at 2.3 hours.

Ginsburg's recorded 2.5 hours should also be reduced to 2.3 hours, by deducting two excessive 0.1-hour entries on April 13, 2012.

Ryan's recorded time of 0.2 hours appears reasonable, but Keltz's requested 1.2 hours should be reduced to 1 hour, by deducting excessive 0.1-hour entries on May 17 and May 24, 2012.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,650, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 2.1 | $300/hour | $630.00 |
| Bennecoff | 2.3 | $225/hour | $517.50 |
| Ginsburg | 2.3 | $175/hour | $402.50 |
| Ryan | 0.2 | $100/hour | $20.00 |
| Keltz | 1.0 | $80/hour | $80.00 |
| | | | Total: $1,650.00 |

Plaintiff Banks should also be awarded costs in the amount of $350 for his filing fee.

**13.    _Bloomfield v. Allied Intersate, Inc._, No. 12 Civ. 3358**

Plaintiff Mary Bloomfield ("Bloomfield"), a resident of Carmel, Indiana, seeks $4,391.16 in fees and costs. (*See generally* Pl. Mem (Dkt. 23); Bill of Costs (Dkt. 17).) For the reasons that follow, this Court respectfully recommends that Bloomfield be awarded $2,160.50 in fees and $350 in costs, for a total award of $2,510.50.

Kimmel's time should be reduced from 5.1 hours to 3.3 hours, by excluding 15 ECF-email entries, two other excessive 0.1-hour entries on March 27 and May 1, and half of the 0.2 hours that Kimmel recorded for reviewing Allied's Answer on July 16, 2012.

Bennecoff's time should be reduced from 3.6 hours to 3.2 hours, by excluding excessive 0.1-hour entries on June 20, June 27, and July 16, 2012 (two entries). I further recommend that an additional 0.8 hours of her time be compensated at the paralegal rate of $100 per hour, for paralegal-level work that she performed on July 16, 2010.

Ginsburg's time should be reduced from 2.6 hours to 2.3 hours, by excluding excessive 0.1-hour entries on April 16 (two itemized sub-entries) and April 23. 2012.

48

Ryan's 0.2 recorded hours appears reasonable, but Keltz' time should be reduced from 1.8 hours to 1.6 hours, by excluding excessive 0.1-hour entries on May 25 and June 20, 2012.

Based on the above, I recommend that the Court adopt a lodestar in this case of $2,160.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 3.3 | $300/hour | $990.00 |
| Bennecoff | 2.4 | $225/hour | $540.00 |
|  | 0.8 | $100/hour | $80.00 |
| Ginsburg | 2.3 | $175/hour | $402.50 |
| Ryan | 0.2 | $100/hour | $20.00 |
| Ketlz | 1.6 | $80/hour | $128.00 |
|  |  |  | **Total: $2,160.50** |

Plaintiff Bloomfield should be awarded $350 in costs for the filing fee, but should not be awarded counsel's travel costs, for the reasons discussed above.

### 14.   *Roop v. Allied Intersate, Inc.*, No. 12 Civ. 3442

Plaintiff Barbara Roop ("Roop"), a resident of Roanoke, Virginia, seeks $3,056 in fees and costs. (*See generally* Pl. Mem (Dkt. 12); Bill of Costs (Dkt. 11, Ex. A).) For the reasons that follow, this Court respectfully recommends that Roop be awarded $1,257.50 in fees and $350 in costs, for a total award of $1,607.50.

As a preliminary matter, the Court notes that, in this case, the Firm seeks to recover time for an initial client consultation conducted by someone named Steven Hill ("Hill"). Neither Hill's connection with the Firm, nor his qualifications, are explained in the submissions in this case, and, in other cases, the Firm has typically written off such "initial consultations," including those conducted by Hill. (*See, e.g.*, Bill of Costs, in *Campbell v. Allied Interstate, Inc.*,

No. 12 Civ. 1315 (Dkt. 19), at 1 (writing off 0.6 hours billed to initial consultation conducted by Hill); Bill of Costs in *Brasseaux v. Allied Intersate, Inc.*, No. 12 Civ. 1323 (Dkt. 15), at 1 (writing of 0.1 hour spent by Hill on "Initial contact from client" and passing information to Kimmel as "not billed - administrative").) Under the circumstances, Hill's 0.2 hours should not be compensated here.

Kimmel's time should be reduced from 4.6 hours to 2.9 hours, by excluding 12 ECF-email entries and additional excessive 0.1-hour entries on February 9 and April 23, 2012; by reducing a block-billed 0.6-hour entry on July 2, 2012 to 0.4 hours for the apparent inclusion of excessive time to send and receive emails; and by reducing by half the 0.2-hour entry also recorded on July 2, 2012, for the review of Allied's Answer.

Patterson's time should be reduced from 1.2 hours to 0.9 hours, by deducting excessive 0.1-hour entries on April 23, April 24, and July 2, 2012.

Bennecoff's time should be excluded in its entirety, as it appears that her sole task on this case was to receive an email with a deposition notice and offer of judgment and to forward it to the attorneys and staff handling the matter.

Troccoli's 0.2 hours, billed in the initial phases of client consultation, appear reasonable. The same is true for Fitti's 1.2 hours and Ryan's 0.2 hours on this case. All should be allowed.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,287.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Hill | -- | -- | -- |
| Kimmel | 2.9 | $300/hour | $870.00 |
| Patterson | 0.9 | $225/hour | $202.50 |
| Bennecoff | -- | -- | -- |
| Troccoli | 0.2 | $225/hour | $45.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| Fitti | 1.2 | $100/hour | $120.00 |
| | | | **Total: $1,257.50** |

Plaintiff Roop should be awarded $350 in costs for the filing fee. As discussed above (*see supra*, Part II(C), n.6 and accompanying text), I do not recommend that the Court also award the unsubstantiated $26 that the Firm apparently estimates that it incurred for "expenses associated with postage and copying" on the plaintiff's behalf (Kimmel Decl. (Dkt. 11, Ex. B), at ¶ 34; *see* Bill of Costs (Dkt 11, Ex. A), at 2).

### 15. *Fields v. Allied Interstate, Inc.*, No. 12 Civ. 4063

Plaintiff Robert P. Fields ("Fields"), a resident of Show Low, Arizona, seeks $3,448 in fees and costs. (*See generally* Pl. Mem (Dkt. 12); Bill of Costs (Dkt. 13).) For the reasons that follow, this Court respectfully recommends that Fields be awarded $901.50 in fees and $350 in costs, for a total award of $1,251.50.

The offer of judgment in this case is dated July 26, 2012 and provides that "Defendant will allow judgment to be entered against it" for $500, "plus reasonable costs and attorneys' fees incurred by Plaintiff *up to the date of this Offer of Judgment only.*" (Offer of Judgment, (Dkt. 9 Ex. A (emphasis added)).) Despite conceding that the offer of judgment was "apparently placed into the mail on July 26, 2012," the date appearing next to defense counsel's signature, the

51

Kimmel Firm, on Fields' behalf, has requested that the Court issue a fee award that would cover attorneys' fees incurred through July 27, 2012, which, the Firm argues, should be considered the date of the offer.[16] (Pl. Mem. (Dkt. 12), at 23.) In support of this request, the Firm first posits that the offer of judgment should be construed like any contract and that ambiguities should thus be construed against the drafter. The Firm, however, does not explain what is ambiguous about the offer that warrants departing from the four corners of the document. Second, the Firm argues that, because it did not receive the offer in the mail until July 27, 2012, "such offer could only have been extended on July 27, 2012." (Pl. Mem., at 24.) Ultimately, with the apparent recognition that the offer was not actually extended on July 27, but on July 26, the Firm argues merely that the offer "should be *deemed* to have been extended on the day that Plaintiff learned of its existence, July 27, 2012." (*Id.* (emphasis added).)

These arguments are without merit. The plain meaning of "the date of this Offer of Judgment" is July 26, 2012 – the date indicated on the face of the document itself, and the Firm offers no legitimate reason why the words "the date of this Offer" should refer to any other date.[17] Indeed, the Firm's own practice in another case before this Court – *Barile* (*see supra*) – is at odds with its arguments here. In that case, an offer of judgment had apparently been dated

---

[16] The Firm has also included in its fee application 0.1 hour that was billed on July 28, 2012. The Court assumes that the Firm included that time inadvertently, and that it is not actually seeking reimbursement for any time incurred after July 27.

[17] To the extent the Kimmel Firm relies on the general principle that, under the FDCPA, fees may be recovered for the time spent preparing a fee application (*see* Pl. Mem. (Dkt. 12), at 23), this Court notes that this general principle does not mean that a plaintiff who is entitled to fees based on a specific offer of judgment may somehow recover more fees than the offer of judgment contemplates, simply because additional time was spent on the fee application. *See Zavodnick v. Gordon & Weisberg, P.C.*, Civ. No. 10–7125, 2012 WL 2036493, at *4 (E.D. Pa. June 6, 2012) (holding offer of judgment with cutoff date "necessarily" precluded client of Kimmel Firm from recovering fees for preparation of petition to court after cutoff date).

July 25, 2012 (one day before the offer of judgment in the *Fields* case).  On July 26, 2012,

Bennecoff, according to her time records, called Allied's counsel to confirm that "[Offer of

Judgment] was not *sent* until today [the 26th]" and that it was therefore "OK to redate [the

document] as of today." (Bill of Costs, in *Barile v. Allied Interstate, Inc.*, No. 12 Civ. 916

(Dkt. 20) (emphasis added).)  Based on Allied's agreement as to when the offer was, in fact,

sent, it appears that Benecoff then hand-corrected the date on the offer of judgment to read

July 26, 2012 (*see* Offer of Judgment, in *Barile* (Dkt. 13, Ex. A); *see also* Def. Mem., in *Barile*

(Dkt. 24), at 14, n.10 (noting that offer of judgment had "stipulated date" of July 26)).

Bennecoff's apparent conduct in connection with the *Barile* case demonstrates the Firm's own

understanding that, if the offer of judgment in that case *had* been sent on July 25 (even though

received on July 26), then work done on July 26 would not have been compensable under the

offer, and that it is the date written on the offer of judgment that controls.  The Firm, in *Fields*,

has offered no serious legal argument to the contrary, and I therefore recommend that time

incurred by counsel and the Firm's staff from July 27 forward be excluded.

In *Fields*, Kimmel recorded 3 hours through July 26, but, of that time, 1.3 hours should

be deducted for 11 ECF-email entries, for another excessive 0.1-hour entry on April 24, 2012, by

which Kimmel separately billed 6 minutes for merely instructing a paralegal to prepare a form

letter of representation, and for half of the 0.2 hours that Kimmel recorded on May 29, 2013, for

reviewing Allied's Answer.  The Firm should thus be compensated for a total of 1.7 hours of

Kimmel's time.

Bennecoff billed only 0.2 hours before July 27, and that time appears reasonable.

Ginsburg billed 1.7 hours before July 27, from which 0.2 hours should be deducted for excessive entries attributing 0.1-hour each to two emails attaching an already-drafted complaint for review.

Ryan's 0.2 hours appears reasonable, and Keltz should be compensated for the 0.8 hours he recorded before July 27, as those hours also appear reasonable and are well-documented.

Based on the above, I recommend that the Court adopt a lodestar in this case of $901.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|------------|-------|------|----------------|
| Kimmel | 1.7 | $300/hour | $510.00 |
| Bennecoff | 0.2 | $225/hour | $45.00 |
| Ginsburg | 1.5 | $175/hour | $262.50 |
| Ryan | 0.2 | $100/hour | $20.00 |
| Keltz | 0.8 | $80/hour | $64.00 |
| | | | **Total: $901.50** |

Plaintiff should also be awarded $350 in costs for the filing fee.

### 16.   *Clum v. Allied Interstate, Inc.*, No. 12 Civ. 4187

Plaintiffs Jeffrey and Barbara Clum ("the Clums"), residents of Lagrangeville, New York, seek $4,418.66 in fees and costs.  (*See generally* Pl. Mem (Dkt. 15); Bill of Costs (Dkt. 14, Ex. A).)  For the reasons that follow, this Court respectfully recommends that the Clums be awarded $1,971 in fees and $350 in costs, for a total award of $2,321.

Kimmel's time should be reduced from 4.5 hours to 2.8 hours, by deducting 14 ECF-email entries, additional excessive 0.1-hour entries on May 15 and June 27, 2012, and half of the time that Kimmel recorded for reviewing Allied's Answer on August 10, 2012.

Bennecoff's time should be reduced from 4.1 hours to 3.2 hours.  In particular, I recommend that the Court reduce the 0.7 hours she recorded in 6 separate entries on June 21, 2012, to 0.3 hours, as, judging from her descriptions, the individual tasks included in those entries should have taken less than time recorded.  An additional 0.5 hours should be deducted for excessive entries to send or receive emails on June 27, July 13 (two itemized sub-entries), August 2, and August 10, 2012.

Ginsburg billed 0.6 hours, but that time should be reduced to 0.2 hours.  Ginsburg's 0.4 hours of work on May 21, 2012 was redundant of work performed by Diehl to the extent that he was simply reviewing her work to send along to Kimmel for approval, and was inflated in that Ginsburg bills 0.2 hours for short email exchanges with Kimmel and with the Clums.

Diehl's requested time should be reduced from 3.2 hours to 3 hours, by deducting two excessive 0.1-hour entries for merely sending documents by email on May 21 and August 3, 2012.

Ryan's recorded time of 0.2 hours appear reasonable, but Keltz's recorded time of 0.8 hours should be reduced to 0.7 hours to account for excess on June 21, 2012.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,971 calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 2.8 | $300/hour | $840 |
| Bennecoff | 3.2 | $225/hour | $720 |
| Ginsburg | 0.2 | $175/hour | $35 |
| Diehl | 3.0 | $100/hour | $300 |
| Ryan | 0.2 | $100/hour | $20 |
| Keltz | 0.7 | $80/hour | $56 |
| | | | **Total: $1,971** |

The Clums should also be awarded $350 in costs for the filing fee, but not travel expenses.

### 17.   *Bradshaw v. Allied Interstate, Inc.*, No. 12 Civ. 4235

Plaintiff Rosemary Bradshaw ("Bradshaw"), a resident of North Ogden, Utah, seeks $2,797.50 in fees and costs. (*See generally* Pl. Mem (Dkt. 15); Bill of Costs (Dkt. 15, Ex. A).) For the reasons that follow, this Court respectfully recommends that Bradshaw be awarded $1,045 in fees and $350 in costs, for a total award of $1,395.

In addition to the usual Memorandum and Declarations in support of the Firm's requested fees, Bradshaw submits a declaration from William F. Horn, Esq., a New York attorney who also practices FDCPA law, who states he charges $425 per hour and that Judge Kimba M. Wood of this Court recently approved his requested rate in *Lagana v. Stephen Einstein & Assocs., P.C.*, 1:10 Civ. 04456 (KMW) (GWG), and who opines that the Kimmel Firm's requested rates are reasonable. (*See* Declaration of William F. Horn, Esq., in Support of Plaintiff's Motion for Attorneys' Fees and Costs, dated October 4, 2012 (Dkt. 20).) In addition, the Firm submits a copy of a second Horn declaration – the one that had been submitted in the *Lagana* case itself. (*See* Declaration of William F. Horn, Esq., in Support of Award of

56

Attorneys' Fees and Costs, in *Lagana v. Stephen Einstein & Assocs., P.C.*,

No. 10 Civ. 4456 (KMW) (Dkt. 25, Ex. B in the *Bradshaw* case).) Although the evidence

introduced by the Horn Declarations is relevant, it is not dispositive. In *Lagana*, Judge Wood

approved the rate of $425 per hour in an FDCPA class action, not a routine single-plaintiff case

like those before this Court. Further, the other factors discussed above, including the nature and

quality of the work performed and the market rate as evidenced by the rates requested and

approved in other cases (including cases involving the Kimmel Firm), still favor reduction. This

Court therefore adheres to its earlier recommendations, as set out above, as to reasonable billing

rates for the Kimmel Firm.[18]

Kimmel's recorded time on the *Bradshaw* case should be reduced from 3.2 hours to

1.7 hours, to account for 12 ECF entries, two excessive 0.1-hour entries on May 3 and May 23,

2012, and a vague 0.1-hour entry on August 1, 2012.

Bennecoff's recorded time should be reduced from 0.9 hours to 0.7 hours for excessive

0.1-hour entries for emailing documents on June 5 and June 27, 2012.

Troccoli's 0.3 hours, spent reviewing the information provided in plaintiff Bradshaw's

intake interview, appears reasonable and compensable.

Ginsburg's recorded time of 1.4 hours should be reduced to 1.2 hours, by deducting

0.2 hours that he bills for emailing the draft Complaint to two other individuals at the Firm.

---

[18] The submissions in the *Powers*, *Schroeder*, *Simpson*, and *Snajczuk* cases, discussed *infra*, also include copies of Horn's declaration from *Lagana*, but offer no additional declaration of Horn addressed to the Kimmel Firm's requested rates in these cases. In any event, for the reasons stated above, I recommend that the Court not rely on *Lagana* to increase the approved rates for the Kimmel Firm in any of the cases now pending before the Court.

Diehl's 1.5 hours for drafting the Complaint should not be compensated at all.  An hour and a half to revise the form Complaint filed by the Firm in these actions is not itself wholly unreasonable, and is within (even if at the high end of) the range of time billed for the same task in other cases now before the Court.  What is unreasonable, however, is to allow recovery for Diehl's time drafting the Complaint, when Ginsburg then had to spend another 1.2 hours "review[ing] and revis[ing]" it.  (Bill of Costs (Dkt. 15, Ex. A), at 1.)  Diehl should not be compensated for work that apparently had to be wholly re-done by a junior associate before the Complaint could be presented to Kimmel.

Ryan's sole task in this action, a task he has performed in all of the other cases addressed in this Report and Recommendation, was to draft and send a letter to Allied, informing it of the Firm's representation of the client, and asking that it cease and desist its activities.  Ryan generally charged 0.1 hour or 0.2 hours for that routine task, and, especially because the Firm likely used a standard template for such letters, it would be appropriate to reduce his recorded 0.3 hours in this case to 0.2 hours.

Keltz's time on this case should be reduced from 1.2 hours to 1 hour, by deducting excessive and vague entries on May 24 and August 1, 2012.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,045, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|------------|-------|------|----------------|
| Kimmel | 1.7 | $300/hour | $510.00 |
| Bennecoff | 0.7 | $225/hour | $157.50 |
| Troccoli | 0.3 | $225/hour | $67.50 |
| Ginsburg | 1.2 | $175/hour | $210.00 |
| Diehl | -- | -- | -- |
| Ryan | 0.2 | $100/hour | $20.00 |
| Keltz | 1.0 | $80/hour | $80.00 |
| | | | **Total: $1,045.00** |

Plaintiff Bradshaw should also be reimbursed for the $350 filing fee..

## 18. *Smith v. Allied Interstate, Inc.*, No. 12 Civ. 4279

Plaintiff Thomas Smith ("Smith"), a resident of Portland, Oregon, seeks $3,463.50 in fees and costs. (*See generally* Pl. Mem (Dkt. 17); Bill of Costs (Dkt. 16, Ex. A).) For the reasons that follow, this Court respectfully recommends that Smith be awarded $1,172.50 in fees and $350 in costs, for a total award of $1,722.50.

Kimmel's recorded time should be reduced from 2.5 hours to 0.5 hours, by deducting 18 ECF entries, as well as excessive entries on March 16 and June 1, 2012.

Patterson's recorded time should be reduced from 3.1 hours to 2.3 hours, by deducting excessive entries on April 18, May 9 (deducting 0.2 hours from a 0.4-hour entry that reflects four emails), May 17, May 22, June 5, July 30, and August 10, 2012. In general, the listed entries attribute 0.1 hour to sending or receiving each of several emails on one day, and describe the contents of these emails in only vague terms.

Bennecoff's recorded time of 0.5 hours appears reasonable and compensable.

59

Gentilcore's recorded time should be reduced from 0.9 hours to 0.7 hours, by deducting excessive entries on July 9 and July 12, 2012.

Fitti's recorded time of 3.1 hours should be reduced to 2.5 hours, by deducting excessive 0.1-hour entries on April 19, June 12, July 10 (three entries), and August 10, 2012. Ryan's time of 0.2 hours on this matter appears reasonable.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,172.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 0.5 | $300/hour | $150.00 |
| Patterson | 2.3 | $225/hour | $517.50 |
| Bennecoff | 0.5 | $225/hour | $112.50 |
| Gentilcore | 0.7 | $175/hour | $122.50 |
| Fitti | 2.5 | $100/hour | $250.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| | | | Total: $1,172.50 |

Plaintiff Smith should also be reimbursed for the $550 in fees reflected on the Court's docket. Plaintiff's claim for $26 in copying and postage costs should be rejected for the same reasons explained above, in connection with the *Roop* case, in which Plaintiff requested precisely the same amount for such costs, with just as little support.

### 19. *Mason v. Allied Interstate, Inc.*, No. 12 Civ. 4318

Plaintiff Nicole Mason ("Mason"), a resident of Marietta, Georgia, seeks $4,053 in fees and costs. (*See generally* Pl. Mem (Dkt. 15); Bill of Costs (Dkt. 15, Ex. A).) For the reasons that follow, this Court respectfully recommends that Mason be awarded $1,474.50 in fees and $350 in costs, for a total award of $1,824.50.

As a general matter, I do not recommend that a fee award in this case cover counsel's time preparing discovery demands. Allied filed its Answer (Dkt. 9) on August 10, 2012, and the Kimmel Firm plainly anticipated that an offer of judgment would arrive soon thereafter. (*See* Bill of Costs, at 6 (entry for Ginsburg on August 10, 2010, stating "Call to client about answer being filed and [Offer of Judgment] anticipated from Defendant"); Pl. Mem., at 3 (conceding that, "immediately" upon receipt of Answer, the Kimmel Firm "anticipated an Offer of Judgment based on prior experience").)   Indeed, Allied's offer of judgment is dated August 10, 2012, the same day the Answer was filed. (*See* Dkt. 11, Ex. A.)   The Kimmel Firm apparently decided that, with an offer of judgment expected imminently, the Firm should do as much work on the case as possible, as soon as possible, to increase its fees.   It therefore billed 4.4 attorney hours on August 10, 2012, alone (over one-third of the hours for which the Firm requests compensation in the entire case), including nearly two hours devoted to preparing discovery requests and initial disclosures. (Bill of Costs (Dkt. 15, Ex. A), at 5-6.)   The prudent, fee-minimizing course-of-action would have been to delay preparation of discovery materials for at least a day or two, to see if such work was rendered unnecessary by an offer of judgment that the plaintiff wished to accept.   The Firm should not be rewarded for rushing to churn fees before the clock ran out.

Overall, Kimmel's requested time on this case should be reduced from 4.2 hours to 1.7 hours, by deducting 14 ECF entries , as well as excessive entries on December 20, February 6 (deducting 0.1 hour from a 0.2-hour entry devoted to sending and receiving short emails), June 14, June 19 (deducting 0.1 hour from a similar 0.2-hour entry), and August 10, 2012 (deducting 0.4 hours spent on discovery, 0.2 hours spent on amorphously described email correspondence; and 0.1 hour from 0.2 hours spent reviewing Allied's Answer).

61

Of Bennecoff's recorded time of 4.1 hours, 1.5 hours should be excluded for time spent on discovery on August 10, 2102, and an additional 0.1 hour should be stricken for time devoted to sending an email vaguely described as "re: fee petition documents" (Bill of Costs (Dkt. 15, Ex. A), at 6), where she also recorded several other entries on the same day for work on the fee petition. An additional 0.6 hours of Bennecoff's time should be compensated at a paralegal rate because the work reflected in those time entries involved non-lawyer tasks, like preparing a table of contents.

Ginsburg's recorded time on the *Mason* case should be reduced from 2.6 hours to 2.2 hours, by deducting several excessive entries for sending and receiving emails on May 31, 2012 (two 0.1-hour sub-entries for emails and a 0.2-hour entry for receipt of a document and forwarding the same document to a paralegal).

Ryan's recorded time of 0.2 hours appears reasonable, as does Keltz's time of 0.9 hours.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,474.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 1.7 | $300/hour | $510.00 |
| Bennecoff | 1.9 | $225/hour | $427.50 |
|  | 0.6 | $100/hour | $60.00 |
| Ginsburg | 2.2 | $175/hour | $385.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| Keltz | 0.9 | $80/hour | $72.00 |
|  |  |  | **Total: $1,474.50** |

Plaintiff Mason should also be awarded the $350 filing fee reflected on the Court's docket.

20.     *Paul v. Allied Interstate, Inc.*, No. 12 Civ. 4340

Plaintiff Hara Paul ("Paul"), a resident of Houston, Texas, seeks $3,559.50 in fees and

costs. (*See generally* Pl. Mem (Dkt. 21); Bill of Costs (Dkt. 20, Ex. A).)  For the reasons that

follow, this Court respectfully recommends that Paul be awarded $1,445 in fees and $350 in

costs, for a total award of $1,995.

On this case, Kimmel's time should be reduced from 3.6 hours to 1.8 hours, deducting

for 15 ECF entries, as well as excessive entries on February 6 (where I recommend that two of

four separate entries for emails be deducted) and June 6, 2012.

Patterson's time should be reduced from 2.2 hours to 2 hours, to account for excessive

entries for brief emails on January 16 and May 18, 2012.

Bennecoff's time should be reduced from 1.1 hours to 0.9 hours, by deducting 0.1 hour

from the 0.3 hours she attributed to sending three short emails on July 3, 2012, and by deducting

a vaguely described entry for email correspondence on June 29, 2012.

Gentilcore's 0.3 hours, spent proofreading the Complaint, appears reasonable and

compensable.

Fitti's time should be reduced from 2.4 hours to 2 hours, by deducting excessive emails

on July 6, 2012 (where Fitti billed for email correspondence with Kimmel that Kimmel, himself,

wrote off), July 11 (two entries for sending a document that she billed separately for drafting),

and July 31, 2012.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,445,

calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 1.8 | $300/hour | $540.00 |
| Patterson | 2.0 | $225/hour | $450.00 |
| Bennecoff | 0.9 | $225/hour | $202.50 |
| Gentilcore | 0.3 | $175/hour | $52.50 |
| Fitti | 2.0 | $100/hour | $200.00 |
| | | | **Total: $1,445.00** |

Plaintiff Paul should also be reimbursed for the $550 in fees reflected on the Court's docket.

### 21.   *Williams v. Allied Interstate, Inc.*, No. 12 Civ. 4429

Plaintiff Arnold D. Williams ("Williams"), a resident of Orange Park, Florida, seeks $2,192.50 in fees and costs. (*See generally* Pl. Mem (Dkt. 16); Bill of Costs (Dkt. 15, Ex. A).) For the reasons that follow, this Court respectfully recommends that Williams be awarded $962.50 in fees and $550 in costs, for a total award of $1,512.50.

Kimmel's recorded time should be reduced from 2.6 hours to 1 hour, by deducting 16 ECF entries.

Patterson's time should be reduced from 1.5 to 1.2 hours, by deducting excessive 0.1-hour entries on May 1 and June 26, 2012, as well as an entry on July 16 that references an email from the Eastern District of Pennsylvania and apparently pertains to a different case.

Gentilcore's 0.7 hours are sufficiently documented and should be compensated.

Allen's time, billed in six entries over two days, should be reduced from 1.4 to 1.2, by deducting excessive 0.1-hour entries on April 18 and 20, 2012.

64

Fitti's time should be reduced from 1.1 hours to 1 hour, by deducting an excessive entry on June 27, 2012. The 0.3 hours that Ryan recorded for preparing and sending an initial letter to Allied, a task he has performed in every case currently before this Court, should be reduced to 0.2 hours, the amount of time he has generally recorded.

Based on the above, I recommend that the Court adopt a lodestar in this case of $962.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 1.0 | $300/hour | $300.00 |
| Patterson | 1.2 | $225/hour | $270.00 |
| Gentilcore | 0.7 | $175/hour | $122.50 |
| Allen | 1.2 | $125/hour | $150.00 |
| Fitti | 1.0 | $100/hour | $100.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| | | | Total: $962.50 |

Plaintiff Williams should also be reimbursed for the $550 in fees reflected on the Court's docket.

### 22. _Smallwood v. Allied Interstate, Inc._, No. 12 Civ. 4485

Plaintiff Edward L. Smallwood ("Smallwood"), a resident of Orange Park, Florida, seeks $6,033 in fees and costs. (_See generally_ Pl. Mem (Dkt. 14); Bill of Costs (Dkt. 13, Ex. A).) For the reasons that follow, this Court respectfully recommends that Smallwood be awarded $2,288.70 in fees and $550 in costs, for a total award of $2,838.70.

First, Kimmel's recorded time on this matter should be reduced from 4.6 hours to 2.4 hours, by deducting 18 ECF entries, as well as excessive 0.1-hour entries on December 22,

2011 and July 27, 2012, and 0.1 hour of the 0.2 hours recorded by Kimmel for reviewing Allied's Answer on August 17, 2012.

Bennecoff's recorded 2.5 hours should be reduced to 1.8, by deducting excessive entries on May 31, June 27, August 1 (four sub-entries), and August 17, 2012.

Kelleher's recorded time of 1.9 hours on the *Smallwood* case (the only case before the Court where he has apparently been involved), was all recorded on August 17, 2012, and it appears to have been spent on revising form submissions in both substantive and non-substantive ways (such as adding the procedural history of this case to a memorandum, or modifying captions and tables). Although Kelleher separated out various tasks, he also block-billed some, making it difficult to know how much of his time was devoted to legal tasks and how much of the work he did should have been delegated to a paralegal or secretary. After a careful review of Kelleher's billing records, I recommend that the Firm be compensated for 1 hour of his time at an attorney rate, and an additional 0.7 hours of time at the paralegal rate of $100 per hour.

Ginsburg's 8.2 hours on this matter include 2.4 hours of travel time that should be excluded entirely, as well as 0.8 hours of excessive entries on May 31, June 3, June 4 (where a total of 0.4 hours (in two entries) devoted to email correspondence, should be reduced to 0.2 hours), and August 17, 2012 (where four of 10 entries of 0.1-hour each should be stricken).

The single hour of time billed by Allen appears reasonable.

Keltz's time should be reduced from 1.8 hours to 1.6 hours, by deducting excessive entries on June 4 and June 21, 2012. Ryan's 0.3 hours to prepare an initial letter to Allied should be reduced to 0.2 hours, the amount of time he generally recorded for that task.

In addition to these deductions, a percentage reduction to counsel's time should be considered in this particular case, for the low level of success the Firm achieved on behalf of

Smallwood. *See Hensley*, 461 U.S. at 436 (noting court may consider "degree of success" in determining reasonable fee). In this case, as in all of the others addressed in this Report and Recommendation, the plaintiff accepted an offer of judgment for $500 plus fees and costs. (Offer of Judgment (Dkt. 12, Ex. A).) Unlike the other plaintiffs, however, Smallwood had alleged, in his Complaint, that Allied not only made illegal *attempts* to collect a purported debt from him, but actually *did* collect $1000 that Smallwood did not owe, by convincing him, through misrepresentations, that the debt was real. (Complaint (Dkt. 1) ¶¶ 13-21.) Despite the Firm's representation to this Court that the $500 judgment that was accepted in this case by plaintiff was an "excellent" result (*see* Pl. Mem., at 3), such a result is considerably less than "excellent" for a plaintiff who has allegedly suffered actual pecuniary losses of twice that amount.

Moreover, the Court is troubled by the fact that, on Smallwood's behalf, the Kimmel Firm apparently rejected an earlier offer by Allied to settle the case for an amount that would likely have provided Smallwood with greater relief than he ultimately obtained. The Kimmel Firm's own records support that an early offer was made (*see* Bill of Costs (Dkt. 13, Ex. A), at 2 (entry for May 14, 2012)), and Allied states that this offer was for judgment in the amount of $1,100 in damages, plus $500 in attorneys' fees (*see* Def. Mem. (Dkt. 23), at 2). The Firm contends that this offer was not desirable because it would have left Smallwood with a "net negative" after paying the Firm's total incurred attorneys' fees (*see* Pl. Reply (Dkt. 24), at 1 & n.1), but the Firm offers no support for its assertion that Smallwood would have been obligated to pay counsel at its stated hourly rates, and the Court has some real doubt that the nature of the

Firm's agreement with Smallwood would have required such payment.[19]  Moreover, at the time

the initial offer was communicated, very little time had been recorded by the Firm's attorneys

and staff; even before any reductions, the Firm is now only seeking about $1,000 for that time.

(*See* Bill of Costs (Dkt. 13, Ex. A), at 1-2.)  Given this fact, and the fact that the firm had not

likely incurred any substantial costs by the date of the initial offer, it does not appear that the

early offer could possibly have left Smallwood in a "net negative" position.  More likely,

Smallwood would have recovered *more* than he ultimately did, although acceptance of the early

offer would have led to a smaller recovery for the Firm itself.

 In light of the fact that the judgment obtained on Smallwood's behalf was for only half of

his claimed actual losses, and the fact that, to all appearances, the Firm could readily have

obtained a better result for its client, but failed to do so, I recommend that the time for which

counsel seeks to be compensated in this particular case be reduced by an additional 10 percent.

 Based on the above, I recommend that the Court adopt a lodestar in this case of

$2,288.70, calculated as follows:

---

[19] Indeed, Kimmel explains (without submitting any documentation) that his "fee arrangement with Mr. Smallwood is a hybrid, both a contingency fee and a fee-shift in that my client does not pay me and I am compensated by Defendant by statutory mandate, but only if my client is successful in bringing her [*sic*] claim." (Kimmel. Decl. ¶ 18.)  Nothing in this statement suggests that, by accepting a settlement. Smallwood would have been obligated to make counsel whole for all incurred fees, at the Firm's stated billing rates.

| Timekeeper | Hours | Rate | Resulting Fees |
|------------|-------|------|----------------|
| Kimmel | 2.16 (2.4 less 10%) | $300/hour | $648.00 |
| Bennecoff | 1.62 (1.8 less 10%) | $225/hour | $364.50 |
| Kelleher | 0.9 (1.0 less 10%) | $200/hour | $180.00 |
| | 0.63 (0.7 less 10%) | $100/hour | $63 |
| Ginsburg | 4.5 (5.0 less 10%) | $175/hour | $787.50 |
| Allen | 0.9 (1.0 less 10%) | $125/hour | $112.50 |
| Ryan | .18 (0.2 less 10%) | $100/hour | $18.00 |
| Keltz | 1.44 (1.6 less 10%) | $80/hour | $115.20 |
| | | | **Total: $2,288.70** |

Plaintiff Smallwood should also be reimbursed for the $550 in fees reflected on the Court's docket.

### 23.   *Powers v. Allied Interstate, Inc.*, No. 12 Civ. 4582

Plaintiff Kathy Lynn Powers ("Powers"), a resident of Verdunville, West Virginia, seeks $3,305.50 in fees and costs.  (*See generally* Pl. Mem (Dkt. 14); Bill of Costs (Dkt. 14, Ex. A).) For the reasons that follow, this Court respectfully recommends that Powers be awarded $1,225 in fees and $350 in costs, for a total award of $1,575.

Kimmel's time should be reduced from 4.1 hours to 2.3 hours, after deducting 11 ECF-email entries, excessive 0.1-hour entries on April 5, May 4, May 21, and May 22, and portions of the entries on August 2 (where 0.1 hour should be deducted from the 0.2 hours devoted to email correspondence with Bennecoff) and August 17, 2012 (where 0.1 hour should again be deducted from the 0.2 hours devoted to email correspondence with Bennecoff, and half of Kimmel's recorded time of 0.2 hours should be deducted for his review of Allied's Answer).

69

Patterson's time should be reduced from 1.7 to 1.4, by deducting excessive 0.1-hour entries for emails on May 4 (two entries) and May 21, 2012.

Bennecoff spent 0.6 hours, divided into two entries of 0.3 hours each that both record a call with opposing counsel, and email to Kimmel about that call, and a responsive email from Kimmel.   As it appears that Bennecoff has, as usual, attributed 0.1 hours to every communication regardless of how long it took, her entries should be reduced to 0.2 hours each, for a total of 0.4 hours.

Allen spent 0.8 hours on April 16 reviewing the file and drafting the Complaint. Patterson spend an hour in early May "reviewing" Allen's draft and revising it.  Based on the amount of time generally devoted to drafting Complaints in these actions, this Court believes that Allen's time was essentially superfluous and redundant of work Patterson did over again. As such, Allen's time should not be compensated.

Fitti's recorded 1.2 hours should be reduced to 1.1 hours, by deducting an excessive entry on June 19, 2012.  Ryan's recorded 0.2 hours appears reasonable.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,225, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 2.3 | $300/hour | $690 |
| Patterson | 1.4 | $225/hour | $315 |
| Bennecoff | 0.4 | $225/hour | $90 |
| Allen | -- | -- | -- |
| Fitti | 1.1 | $100/hour | $110 |
| Ryan | 0.2 | $100/hour | $20 |
| | | | **Total: $1,225** |

Plaintiff Powers should also be reimbursed for the $350 filing fee reflected on the Court's docket.

**24.   _Schroeder v. Allied Interstate, Inc._, No. 12 Civ. 4583**

Plaintiff Jay Schroeder ("Schroeder"), a resident of Sequim, Washington, seeks $3,305.50 in fees and costs. (*See generally* Pl. Mem (Dkt. 14); Bill of Costs (Dkt. 14, Ex. A).) For the reasons that follow, this Court respectfully recommends that Schroeder be awarded $1,265 in fees and $350 in costs, for a total award of $1,615.

Kimmel's time on the *Schroeder* case should be reduced from 4.2 hours to 2.1, by deducting 13 ECF-email entries and other excessive entries on November 29, February 6, May 31, June 6, July 27, August 6, and August 17, 2012 (deducting 0.1 hours from 0.2-hour entry for brief email exchange, and 0.1 hour from 0.2-hour entry for review of Allied's Answer).

Patterson's time should be reduced from 1.5 hours to 0.8 hours, by deducting and excessive 0.1-hour entry on November 29, 2011 and reducing a 0.4-hour entry on November 30, 2011 to 0.3, and by deducting excesive 0.1-hour entries from May 23, May 31, June 6 (two entries), and August 6, 2012.

Bennecoff recorded 0.5 hours in two entries, on August 2 and August 17, 2012, which together apparently attribute 0.1 hour each to a call from Allied's counsel stating that the offer of judgment would be forthcoming; an email to other attorneys reporting on that call; another call with Allied's counsel, who apparently stated that the offer of judgment had been sent; another email reporting on the second call; and an email back from Kimmel. All together, this should not have required half and hour of time, but, at most, 0.3 hours, and Bennecoff's time should be reduced accordingly.

Troccoli recorded 0.3 hours on this case (not including time spent on the initial communications with plaintiff Schroeder, which the Firm has written off), which appears reasonable and should be compensated.

Gentilcore's recorded time of 1.6 hours should be reduced by 0.4 hours. On August 17, 2012, the last date for which the Firm requests compensation, Gentilcore "began working on fee petition" for 0.7 hours. Later, however, Bennecoff spent 1.3 hours on that same petition, spending an additional 0.2 hours "review[ing] and redact[ing] bill that JLG started to work on." Based on this Court's review of the records in other cases, 0.9 hours for the task of preparing the bill for the fee petition is unusually high, and I therefore recommend that Gentilcore's time be reduced to 1.2 hours.

Fitti's recorded 1 hour on this case should be reduced to 0.9 hours, by deducting an excessive entry on June 5, 2012.

Ryan recorded 0.1 hour for being told by Kimmel to prepare an initial letter to Allied, 0.1 hour for preparing that letter, and then 0.1 for emailing it. I recommend that Ryan's total time be reduced to his usual 0.2 hours for these tasks.

72

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,265, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|------------|-------|------|----------------|
| Kimmel | 2.1 | $300/hour | $630.00 |
| Patterson | 0.8 | $225/hour | $180.00 |
| Bennecoff | 0.3 | $225/hour | $67.50 |
| Troccoli | 0.3 | $225/hour | $67.50 |
| Gentilcore | 1.2 | $175/hour | $210.00 |
| Fitti | 0.9 | $100/hour | $90.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| | | | Total: $1,265.00 |

Plaintiff Schroeder should also be awarded the $350 filing fee reflected on the Court's docket.

### 25. *Simpson v. Allied Interstate, Inc.*, No. 12 Civ. 5370

Plaintiff Jared Simpson ("Simpson"), a resident of North Scituate, Rhode Island, seeks $3,305.50 in fees and costs. (*See generally* Pl. Mem (Dkt. 19); Bill of Costs (Dkt. 18, Ex. A).) For the reasons that follow, this Court respectfully recommends that Simpson be awarded $1,187.50 in fees and $350 in costs, for a total award of $1,537.50.

Kimmel's time should be reduced from 4.2 hours as follows. The Court should first deduct the 10 ECF-email entries, as well as excessive 0.1-hour entries recorded on February 27 (two entries), July 2, August 1, and August 6, 2012, and half of the 0.2 hours Kimmel spent reviewing Allied's Answer on August 17, for a total deduction of 1.6 hours. Second, the Court should reduce the number of hours that the Firm requests for Kimmel's review of the Simpson bill in preparation for the fee application. Kimmel recorded 0.9 hours for this task, which could

73

have been performed by a lower-billing attorney, as it generally was in the other cases now pending before this Court.  Further, 0.9 hours is an excessive amount of time for the task, given that Gentilcore also billed 0.3 hours on the same review, and that it has generally taken a attorney with the Firm closer to half an hour for performing such a task in its entirety.  (*See, e.g.*, Bill of Costs, in *Brasseaux v. Allied Interstate, Inc.*, No. 12 Civ. 1323 (Dkt. 15), at 11 (Bennecoff attributing 0.5 hours to "Review invoice for services rendered, redact as necessary, and eliminate entries in billing judgment"); Bill of Costs, in *Mason v. Allied Interstate, Inc.*, No. 12 Civ. 4318 (Dkt. 15, Ex. A), at 6 (Bennecoff billing 0.3 hours for review of bill).)  It appears likely that Kimmel used this case as an opportunity to teach Gentilcore how to review and revise a bill for submission (*see* Bill of Costs (Dkt. 12, Ex. A), at 6 (Kimmel reporting reviewing bill himself and then "review with associate Joseph Gentilcore"), and Allied should not have to pay for the excess time necessitated by such training.  I therefore recommend that the Firm be compensated for only 0.5 hours of Kimmel's time to review the bill, at the associate rate of $225/hour.  The Firm should thus be compensated for 1.7 hours of Kimmel's time at the rate of $300 per hour and for 0.5 hours of his time at the rate of $225 per hour.

Patterson's time should be reduced from 1.3 to 1 hour, by deducting excessive entries on June 26 (deducting 0.2 hours from 0.9 total hours billed) and July 2, 2012.

Bennecoff recorded 0.5 hours, which should be reduced to 0.4 hours to account for excessive time devoted to brief correspondence on August 17, 2012.

Gentilcore recorded 1.1 hours[20] on this case, but the 0.3 hours spent reviewing the fee petition should be deducted as redundant of the time that, as noted above, Kimmel spent on the same task.

Fitti's 1.1 hours should be reduced to 0.9 hours, by deducting excessive entries on July 17 and 18, 2012. Ryan's recorded 0.3 hours for being instructed to prepare an initial letter to Allied, and then preparing it, should be reduced to the same 0.2 hours that he has generally billed for the same task.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,187.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|---|---|---|---|
| Kimmel | 1.7 | $300/hour | $510.00 |
| | 0.5 | $225/hour | $112.50 |
| Patterson | 1.0 | $225/hour | $225.00 |
| Bennecoff | 0.4 | $225/hour | $90.00 |
| Gentilcore | 0.8 | $175/hour | $140.00 |
| Fitti | 0.9 | $100/hour | $90.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| | | | **Total: $1,187.50** |

Plaintiff Simpson should also be reimbursed for the $350 filing fee reflected on the Court's docket. Plaintiff's claim for $26 in copying and postage costs should be rejected for the same reasons explained above.

---

[20] In what appears to have been an oversight in the Firm's revision of its form submissions, the Firm states in its submitted brief that Gentilcore spent 1.6 hours on this case. (Pl. Mem. (Dkt. 19) , at 3.) Gentilcore also gives this total in his declaration (Gentilcore Decl. (Dkt. 16), at ¶ 15), but the Bill of Costs (Dkt. 12, Ex. A) reflects 1.1 hours.

26.     *Snajczuk v. Allied Interstate, Inc.*, No. 12 Civ. 7003

Plaintiff Gregory Snajczuk ("Snajczuk"), a resident of Henderson, Nevada, seeks $3,836

in fees and costs. (*See generally* Pl. Mem (Dkt. 9); Bill of Costs (Dkt. 9, Ex. A).)  For the

reasons that follow, this Court respectfully recommends that Snajczuk be awarded $1,632.50 in

fees and $350 in costs, for a total award of $1,982.50.

Kimmel's time should be reduced from 3.9 hours to 2.7 hours, by deducting six

ECF-email entries and excessive short entries for brief correspondence on January 18, March 8,

March 12, March 21, and September 10, 2012 (entry of 0.2 for two brief emails).

Patterson's time should be reduced from 3.3 hours to 1.9 hours, deducting excessive

0.1-hour entries for brief tasks performed on March 7, March 8, March 12, March 21 (two

entries), March 23, April 13, April 17, May 21, June 15, July 19, and September 10, 2012 (three

entries).

Troccoli's 0.4 hours billed for client follow-up, after the initial consultation, appears

reasonable.

Gentilcore billed 0.5 hours in five separate 0.1-hour entries, the first four of which were

devoted to reading four emails from Patterson asking him to get certain information from

Snajczuk and then asking whether he had had time to do what she had asked, and the fifth of

which was finally devoted to sending the email to Snajczuk, asking for information.

Gentilcore's time should be reduced to 0.1 hour, which is more reflective of the actual work

product that he contributed to this case.

Allen billed 2.1 hours to draft the Complaint in this case.  Even in light of Allen's

inexperience and lower billing rate, it should not have taken over two hours to modify a form

pleading that was largely boilerplate, and I therefore recommend that Allen's time be reduced to 1.5 hours.

Fitti's recorded time of 1.1 hours should be reduced to 0.8 hours, by deducting excessive entries on June 15, September 11, and October 11, 2012.

Ryan recorded 0.3 hours for being instructed to prepare an initial letter to Allied, preparing it, and emailing it.   His time should be reduced to the same 0.2 hours that he has generally billed for preparing the same letter.

Based on the above, I recommend that the Court adopt a lodestar in this case of $1,632.50, calculated as follows:

| Timekeeper | Hours | Rate | Resulting Fees |
|------------|-------|------|----------------|
| Kimmel | 2.7 | $300/hour | $810.00 |
| Patterson | 1.9 | $225/hour | $427.50 |
| Troccoli | 0.4 | $225/hour | $90.00 |
| Gentilcore | 0.1 | $175/hour | $17.50 |
| Allen | 1.5 | $125/hour | $187.50 |
| Fitti | 0.8 | $100/hour | $80.00 |
| Ryan | 0.2 | $100/hour | $20.00 |
| | | | **Total:  $1,632.50** |

Plaintiff Snajczuk should also be awarded the $350 filing fee reflected on the Court's docket.  Plaintiff's claim for $26 in copying and postage costs should be rejected for the same reasons discussed above.

## CONCLUSION

For the reasons set forth above, I recommend that the plaintiffs in the actions listed above be awarded fees and costs in the amounts set forth in Parts II(D)(1-26).  In summary, those amounts are as follows:

| Case | Fees | Costs | Total Award |
|------|------|-------|-------------|
| *Barile*<br>12 Civ. 916 | $2,590 | $350 | $2,940 |
| *Zamborowski*<br>12 Civ. 955 | $3,760 | $550 | $4,310 |
| *Campbell*<br>12 Civ. 1315 | $3,381.50 | $550 | $3,931.50 |
| *Black*<br>12 Civ. 1321 | $2,312.50 | $350 | $2,662.50 |
| *Brasseaux*<br>12 Civ. 1323 | $4,034 | $350 | $4,384 |
| *Reed*<br>12 Civ. 1961 | $1,855 | $550 | $2,405 |
| *Thompson*<br>12 Civ. 2291 | $1,575.50 | $350 | $1,925.50 |
| *Waldran*<br>12 Civ. 2380 | $3,855 | $550 | $4,405 |
| *Lawrence*<br>12 Civ. 2552 | $2,197.50 | $550 | $2,747.50 |
| *Harris*<br>12 Civ. 2812 | $2,186 | $350 | $2,536 |
| *Turner*<br>12 Civ. 3208 | $1,665 | $550 | $2,215 |
| *Banks*<br>12 Civ. 3357 | $1,650 | $350 | $2,000 |

| Case | Fees | Costs | Total Award |
|------|------|-------|-------------|
| *Bloomfield*<br>12 Civ. 3358 | $2,160.50 | $350 | $2,510.50 |
| *Roop*<br>12 Civ. 3442 | $1,257.50 | $350 | $1,607.50 |
| *Fields*<br>12 Civ. 4063 | $901.50 | $350 | $1,251.50 |
| *Clum*<br>12 Civ. 4187 | $1,971 | $350 | $2,321 |
| *Bradshaw*<br>12 Civ. 4235 | $1,045 | $350 | $1,395 |
| *Smith*<br>12 Civ. 4279 | $1,172.50 | $350 | $1,722.50 |
| *Mason*<br>12 Civ. 4318 | $1,474.50 | $350 | $1,824.50 |
| *Paul*<br>12 Civ. 4340 | $1,445 | $350 | $1,995 |
| *Williams*<br>12 Civ. 4429 | $962.50 | $550 | $1,512.50 |
| *Smallwood*<br>12 Civ. 4485 | $2,288.70 | $550 | $2,838.70 |
| *Powers*<br>12 Civ. 4582 | $1,225 | $350 | $1,575 |
| *Schroeder*<br>12 Civ. 4583 | $1,265 | $350 | $1,615 |
| *Simpson*<br>12 Civ. 5370 | $1,187.50 | $350 | $1,537.50 |
| *Snajczuk*<br>12 Civ. 7003 | $1,632.50 | $350 | $1,982.50 |

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, Chief Judge, United States Courthouse, 500 Pearl Street, Room 2220, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
January 30, 2013

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies To:

The Honorable Loretta A. Preska

All parties (via ECF)